## JOHN CUNNINGHAM *vs.* HENRY B. PITZER.

### July Term, 1867.

1. It is a good defense to an action of trespass, for seizing and carrying away the property of another, that the defendant acted under duress; and that he did the act complained of involuntarily, and under reasonable apprehensions of serious bodily harm and injury if he declined to comply with the demands of the force compelling him to commit it; which demands he could not reasonably avoid.

2. But if the plaintiff offers evidence tending to show that the defendant might have avoided the committing of the trespass by any reasonable means, such as escape or concealment, it will then become incumbent on the defendant, in order to escape from liability, to show that he had no reasonable means of escaping from the force or fear after they were applied to him, and before the committing of the trespass.

This was an action of trespass on the case brought by the plaintiff below, *Henry B. Pitzer*, against the defendant, *John Cunningham*, in the circuit court of *Berkeley* county, for seizing, threshing and carrying away two hundred bushels of wheat belonging to the plaintiff. The declaration was filed on the 3d of July, 1865. The defendent pleaded not guilty and filed two pleas alleging that at the time of the trespass charged, he was in the service of the army of the Confederate States; but these latter pleas were not insisted upon when the case was heard in this court. He subsequently filed a plea of justification, alleging that at the time of the trespass he was under the compulsion of the officers and soldiers of the army of the so-called Confederate States in the late civil war in the United States, and then and there acted under duress or just fear of life, limb or personal liberty. Issue was joined on this plea, and a

*See page 187.

trial was had in March, 1866, when the jury rendered a verdict for the plaintiff for 287 dollars, with interest from the 26th day of August, 1864, the date of the trespass.

A bill of exceptions in the cause disclosed that the plaintiff having introduced evidence to show that the defendant's machine was used by the confederate army for the purpose of threshing out the plaintiff's wheat, and that the defendant had fed the machine while thus engaged in threshing; and the defendant having introduced evidence tending to show that the said machine and his own personal services were forcibly impressed into the confederate service, the defendant asked the court to instruct the jury:

"That if, from the evidence before them, they believe that defendant did not consent to the use of his machine employed by the Confederate soldiers to thresh out the grain of the plaintiff, but that the same was seized by a military force, which he could not control; and further, if they believe that he accompanied said machine involuntarily and under reasonable apprehensions of serious bodily harm and injury, if he declined or refused to comply with their demand, and which he could not reasonably avoid, then so far as the said defendant is concerned, he has been guilty of no trespass, and unless shown to be otherwise and for other causes guilty, they must find for the defendant." Which instructions the court gave, as prayed for by the defendant, and thereupon the plaintiff asked the court to add thereto the following instructions:

"But to enable the defendant to avail himself of the defense above set forth, he must prove to the satisfaction of the jury, that he had no other reasonable means of saving himself from death, or great bodily harm, or loss of personal liberty. And further, if the jury believe from the evidence that the defendant might by reasonable or practicable means, have avoided such threatened or apprehended injury, by concealment, escape, or refuge, his failing or refusing to do so, counteracts the idea or plea of duress." Which instructions thus asked for on behalf of the plaintiff, were given to the jury by the court.

The defendant excepted to the opinion of the court in giv-
the instructions asked for by the plaintiff.

*Chas. J. Faulkner*, on behalf of the plaintiff in error, said he
would take no notice of the pleas founded upon belligerent
rights, which were filed in this case, as that defense had
been overruled by the decision of this court, during the
present term, in the cases of *Enoch G. Hedges* vs. *Price, Lut-
man*, &c. But he maintained that the circuit court erred in
the instruction given to the jury, pp. 15 and 16 of the prin-
ted record. The instruction asked for by the defendant be-
low presented the true and reasonable law of the case; what
was added at the instance of the plaintiff, carries the doc-
trine further than reason or the authorities justify.

1st. The court in its instruction, repudiates all distinction
in this class of cases, whether they occurred in a period of
war or public insurrection, or in a period of profound peace.
Lord Hale says: "There is to be observed a difference be-
tween the times of war or public insurrection or rebellion,
and the times of peace, for in times of war and public re-
bellion, when a person is under so great power that he can-
not resist or avoid, the law in some cases allows an impunity
for parties compelled, or drawn by fear of death, to do some
acts in themselves capital, which admit no excuses in times
of peace." Pleas of the Crown, p. 40.

2d. It announces the principle, that it requires the same
amount of coercion, compulsion and peril of life and liberty
to excuse involuntary participation in a trespass, against
property, that it would require to excuse complicity in crimes
and felonies of the deepest dye. In opposition to this idea,
Bacon in his Abridgement, vol. 6, title, Trespass, p. 589,
says: "If J. S. be compelled by J. N. to commit a trespass,
the latter is only liable to an action of trespass, for no per-
son can be guilty of trespass unless he act *voluntarily.*"

3d. The instruction of the circuit court carries the doc-
trine as to *trespasses* even beyond what the authorities carry
it in cases of treason and felonies. "If an original force
be proved," says Foster, "and the prisoner can show that he

in earnest attempted to escape, and was prevented; or that an attempt to escape would have been attended with great difficulty and danger, so that upon the whole he may be presumed to have continued amongst them against his will, *though not constantly under an actual force, or fear of immediate death,* these circumstances and others of like tendency, proven to the satisfaction of the court and jury, will be sufficient to excuse him." Foster's Crown Law, p. 217.

*Stanton & Allison,* for the defendant in error.

MAXWELL, J. The record in this case contains four special pleas as well as the plea of not guilty.

Two of the special pleas attempt to justify the trespass charged in the declaration on the belligerent rights of the defendant, and a third one attempts to set up a pardon for the acts charged. These three pleas were all demurred to in the court below and the demurrers sustained to each one of them. This is assigned as error in the petition, but is not insisted on in argument here, because it is said that this court has overruled the defence of belligerent rights during the present term in the cases of *Hedges* vs. *Price* and others. These pleas do not raise the questions attempted to be set up in them of the belligerent rights of, or a pardon to the defendant, so that if these were good defences, when properly pleaded, there would still be no error in sustaining the demurrer to them.

The other special plea is a plea of duress to which there was a replication.

On the trial before the jury certain instructions were given by the court to the jury, which were excepted to by the defendant and bill of exceptions given him by the court.— The bill of exceptions states that "the plaintiff having introduced evidence to show that the defendant's machine was used by the confederate army for the purpose of threshing out the plaintiff's wheat, and that the defendant had fed the machine whilst thus engaged in threshing, and the defendant having introduced evidence tending to show that the

said machine and his own personal services were forcibly impressed into the confederate service, the defendant by his counsel asked the court to give the following instructions to the jury:

That if from the evidence before them they believe that defendant did not consent to the use of his machine employed by the confederate soldiers to thresh out the grain of the plaintiff, but that the same was seized by a military force, which he could not control; and further if they believe that he accompanied said machine involuntarily and under reasonable apprehension of serious bodily harm and injury, if he declined or refused to comply with their demand, and which he could not reasonably avoid, then so far as the said defendant is concerned he has been guilty of no trespass, and unless shown to be otherwise and for other causes guilty, they must find for the defendant." Which instructions the court gave as prayed for by the defendant, and thereupon the plaintiff asked the court to add thereto the following instructions: "But to enable the defendant to avail himself of the defence above set forth, he must prove to the satisfaction of the jury that he had no other reasonable means of saving himself from death, or great bodily harm, or loss of personal liberty. And further if the jury believe from the evidence, that the defendant might by any reasonable or practicable means have avoided such threatened or apprehended injury by concealment, escape, or refuge, his failing or refusing to do so counteracts the idea or plea of duress." Which instructions thus asked for on behalf of the plaintiff were given to the jury by the court.

The plaintiff here, who was the defendant below, insists that this instruction does not propound the law correctly upon the case as stated in the bill of exceptions, or at least, that that part of it does not which was given at the instance of the plaintiff. The defendant as appears from the bill of exceptions had given evidence to the jury tending to show that his machine and his own personal services were forcibly impressed into the confederate service. In order to see whether or not the instructions were properly given it may

be supposed that the evidence given was sufficient to prove to the satisfaction of the jury all that is certified by the court it tended to prove.   Assuming these facts to be proved then by the defendant, are they sufficient to relieve him from liability as a trespasser?   It may, I think, be laid down as a general rule that the rights of the private citizen, in person or property, cannot be invaded without some one being responsible for the wrong and liable to compensate for the injury in damages.   In the case at bar, a trespass had been committed on the property of the plaintiff by the defendant, but the defendant had shown that he had been compelled by force to do the act.   The plaintiff claiming that the defendant had not shown enough to relieve himself from liability, asked the court to give the following additional instructions which he did:  "But to enable the defendant to avail himself of the defence above set forth, he must prove to the satisfaction of the jury that he had no other reasonable means of saving himself from death, or great bodily harm, or loss of personal liberty."

To show that this instruction is erroneous we are cited by the counsel for the plaintiff here, who was the defendant below, to Bacon's Abridgement, title Trespass, where it is said that, "if J. S. be compelled by J. N. to commit a trespass, the latter is only liable to an action of trespass, for no person can be guilty of trespass unless he act voluntarily." The authority cited in Bacon for this rule is the case of *Smith* vs. *Stone*, Styles' Reports, p. 65.  As the case is a short one, I will quote it entire, as reported:  "Smith brought an action of trespass against Stone *pedibus ambulando,* the defendant pleads this special plea in justification, viz :— That he was carried upon the land of the plaintiff by force and violence of others, and was not there voluntarily, which is the same trespass, for which the plaintiff brings his action.   The plaintiff demurs to this plea:  In this case Roll, justice, said, that it is the trespass of the party that carried the defendant upon the land, and not the trespass of the defendant; as, he that drives my cattle into another man's land is the trespasser against him, and not I who am the

owner of the cattle." This case is almost precisely like the case at bar as made in the bill of exceptions, and the plea of the defendant, "that he was carried upon the land of the plaintiff by force and violence of others, and was not there voluntarily," was held to be a good defence, and that the party that carried the defendant on the land was guilty of the trespass. This case was decided more than two hundred years ago, and no case has been cited here in which the principles there decided have been disturbed by the decision of any court since that time. And they are indeed so manifestly just and reasonable that I do not see how any court could reverse them.

There is another class of cases which it is thought by some establishes principles different from those held in the case of *Smith* vs. *Stone;* but I think the slightest attention to them will show them to be in perfect harmony. The oldest case of the class referred to, that I have seen, is that of *Weaver* vs. *Ward*, Hobarts Reps., p. 134, decided before the case of *Smith* vs. *Stone.*

Weaver brought an action of trespass, assault and battery, against Ward. The defendant pleaded that he was amongst others, by the commandment of the lords of the council, a trained soldier in London, of the band of one Andrews, captain, and so was the plaintiff, and that they were skirmishing with their muskets charged with powder for their exercise *in re militari* against another captain and his band, and as they were skirmishing, the defendant *casualiter et per infortunium et contra voluntatem suam,* in discharging his piece did hurt and wound the plaintiff, which is the same trespass, &c. There was a demurrer to this plea by the plaintiff and the plea held to be no defence. The reasons for holding the plea bad as reported in the case are the following: "For though it were agreed that if men tilt or tourney in the presence of the king, or if two masters of defence playing their pieces kill one another that this shall be no felony, or if a lunatic kill a man or the like, because felony must be done *animo felonico;* yet in trespass which tends only to give damages according to hurt or loss, it is not so;

and therefore if a lunatic hurt a man he shall be answerable in trespass; and therefore no man shall be excused of a trespass (for this is the nature of an excuse and not of a justification *prout ei bene licuit*) except it may be judged utterly without his fault; as if a man by force take my hand and strike you, or if here the defendant had said that the plaintiff ran cross his piece when it was discharging; or had set forth the case with the circumstances so as it had appeared to the court that it had been inevitable, and that the defendant had committed no negligence to give occasion to the hurt.

The next case that I find is the case of *Underwood* vs. *Hewson*, 1 Strange R., 596, where the defendant was uncocking a gun and the plaintiff standing to see it, it went off and wounded him, and at the trial it was held that the plaintiff might maintain trespass. In another case, more recent, *Leome* vs. *Bray*, reported in 3 East., 593, where one accidentally drove his carriage against that of another, he was held liable, though he was not otherwise blamable than driving on the wrong side of the road on a dark night. In this case, the cases of *Weaver* vs. *Ward* and *Underwood* vs. *Hewson*, were both cited and approved. The case of *Taylor* vs. *Rainbow*, 2 H. and M. R., 423, is another case founded on the same principle. In this case, the defendant through neglect, and for want of due caution, but without any design to injure, discharged a loaded gun in a public place, where many people were assembled, the contents of which gun struck the plaintiff's leg and wounded him severely, in consequence of which wound the plaintiff lost his leg and incurred great expense in effecting its cure, and it was held that the defendant was liable.

These principles were still more recently under review in the case of *Jordon* vs. *Wyatt*, 4 Gratt., 151, in which Judge Baldwin said: "It is no ground of defence to this action that the defendant was engaged in a lawful pursuit and intended no harm, and that his act would have been harmless but for his carelessness or negligence. He was not the less a trespasser, and in truth, his only ground of defence

in this or any proper form of action, would have been that he was in no wise careless or negligent, but had proceeded with due caution and circumspection, and that the injury done by his act was occasioned by unavoidable accident. A man is bound so to conduct himself as to avoid doing damage to the person or property of another, and a slight default will render him responsible; as when he is uncocking a gun and it goes off and accidentally wounds a bystander; or if turning round suddenly he were to knock another down, whom he did not see, without intending it; or where he accidentally drives a carriage against that of another, though no otherwise blamable than driving on the wrong side of the road on a dark night; or driving a horse too spirited, or in pulling the wrong rein, or using imperfect harness."

From this review of these cases it is apparent that when one commits a trespass on the person or property of another, whether intentional or unintentional, there is scarcely any thing which will excuse and relieve him from liability, and as it is said in the case of *Weaver* vs. *Ward*, in Hobart, it must "be judged utterly without his fault, as if a man by force take my hand and strike you." Yet there is nothing in any of them inconsistent with the principles of the case of *Smith* vs. *Stone*, but which is in fact sustained by the case of *Weaver* vs. *Ward*.

I think, therefore, that there was error in giving the instructions, or that part of the instruction last before referred to, in the state of the case as disclosed by the bill of exceptions. I think it clear, however, that if the plaintiff in the court below had offered evidence tending to show that the defendant might have avoided committing the trespass by any reasonable, means such as escape or concealment, it would then have been incumbent on the defendant, in order to escape from liability, to have shown to the satisfaction of the jury, that he had no reasonable means of escaping from the force or fear after they were applied to him, and before the trespass was committed. Foster's Crown Law, p. 217. But the bill of exceptions does not disclose that any evidence

of this sort was offered by the plaintiff. If the defendant is not liable, those who forced him to commit the act are, whether he is or not.

I am therefore of the opinion that the judgment ought to be reversed, and the case remanded to the court below for a new trial to be had therein, upon the principles herein indicated.

The President concurred.

JUDGMENT REVERSED.