**UNITED STATES of America, Plaintiff,**

v.

**Ainsley MONTAGUE, Defendant.**

**No. CRIM. H–99–486.**

United States District Court, S.D. Texas, Houston Division.

Nov. 16, 1999.

Doug Davis, Assistant U.S. Attorney, Houston, TX, for Plaintiff.

George Michael DeGeurin, Office of Public Defender, Houston, TX, for Defendant.

Opinion on Intent

HUGHES, District Judge.

1. *Introduction.*

The government charged Ainsley Montague with re-entering the United States illegally after having been deported. *See* 8 U.S.C. § 1326. Montague moved to dismiss, arguing that the government has not pleaded that he had a specific criminal intent. A person's physical presence in this country without permission allows the inference of an intentional entry.

2. *Background.*

Montague had been deported from the United States to Jamaica in 1988 and in 1991. In the summer of 1999, federal agents stopped him in Houston for questioning. Initially Montague gave the agents an alias and a story about entering in Florida. Federal agents say that Montague later admitted his identity and he conceded that he had been deported and had re-entered the country without the consent of the government.

3. *Civil Trespass.*

At common law, an unauthorized entry onto another's land was an intentional wrong—a trespass. 3 WILLIAM BLACK-STONE, COMMENTARIES *209. A trespass requires an intent to enter the property. Because a person is responsible for the consequences of his acts, an intentional walk that crosses another's land is an intentional wrong even when the walker is ignorant of the boundary or ownership. A landowner need not prove the trespasser's means or motive, only that he was there; presence allows the inference of intentional entry. The character of the entry—navigational error, playful excess, or malice aforethought—may affect the damages awarded or penalty assessed for the trespass, but it does not excuse it.

4. *Criminal Trespass.*

A criminal trespass is an intentional act, too. For a trespass to be criminal, a statute must define the elements of the proscribed act and specify the punishment. The ordinary criminal trespass statute is a state law that prohibits a person from entering another's land without consent so long as he knew he was not supposed to be there. *See, e.g.,* TEX. PENAL CODE ANN. § 30.05 (1994). "The common thread running through [the statutes] is the element of unwanted intrusion, usually coupled with some sort of notice ... that they may not enter." MODEL PENAL CODE § 221.2, Comment I (1980). Although the statutes often do not contain an express mental state, the element of notice meant that the defendant's entry must have been intentional. *See, e.g., Day v. State,* 532 S.W.2d 302, 306 n. 2 (Tex.Crim.App.1975)(implying a mental state where none is expressed); *U.S. v. Bailey,* 111 F.3d 1229, 1238 (5th Cir.1997).

Federal law makes it a crime for an alien to be "found in" the country without permission after having been deported. 8

U.S.C. § 1326. The defendant says that the statute is constitutionally defective because it does not require that he have had a specific intent. He says that to be constitutional the statute must include an express element that he intentionally re-entered the country. He argues that being found here is a crime of status, without an intent to violate the law.

It is constitutionally acceptable that a person be responsible for being where he is, as long as he got there by a conscious, voluntary act. The statute says that it is illegal to be here illegally. Although "being found" in the United States sounds passive, the law makes it a crime to be found *without permission*, and without permission implies a mental state. The government must prove that the defendant had the specific intent to violate the law, but the jury may infer—beyond a reasonable doubt—that he intended to violate the law from his mere presence.

The statute on re-entry by an alien is analogous to the statute about re-entry by an excluded person on a military base. *See* 18 U.S.C. § 1382. A defendant who was "found" on the Hickam Air Force Base nine years after he had been formally excluded was guilty of violating the law. *See United States v. Albertini*, 472 U.S. 675, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985). While the predicate for exclusion from a base required an intent to do some modest harm—being at least inconsistent with the operation of the military facility—the re-entry was itself the wrong, making the intent for the re-entry extraneous.

### 5. *Defenses.*

■ To rebut the natural and compelling inference of intent to be where one is found, a defendant may show that his presence was involuntary. If the defendant were shipwrecked on the American coast—no matter how many times he had been deported—he would not be prosecuted under this statute. Similarly, a defendant may justify his trespass by showing that he acted under duress—under the compulsion of the reasonable fear of immediate physical harm. *See, e.g., Cunningham v.*

*Pitzer*, 2 W.Va. 264 (1867)(holding that a West Virginian compelled at gun point by Confederate soldiers to thresh his neighbor's wheat did not trespass). In this case, however, no suggestion has been made of the existence of an intervening force. Involuntariness is a defense to the crime rather, and voluntariness is the element that the evidence of an independent force attacks.

Montague does not say that his unlawful presence in the United States resulted from compulsion; rather he insists that the government *dis*prove the possibility it was. The government would be obliged to rebut evidence of compulsion, but in the absence of evidence that the alien was here involuntarily, it may rest on the inferences from his presence.

### 6. *Conclusion.*

The civil action of trespass derives from the common law, and the crime of trespass is a statutory embellishment of the common law foundation. Both require intent, but both allow intent to be inferred from the act of being on another's land. The crime of illegal re-entry after deportation is consonant with that tradition. Absent evidence of involuntariness, intent to enter may be presumed from an alien's presence in the United States. The lack of an express mental state in the criminal statute is not objectionable because one has historically been implied. He had notice of his deportation, and he was found within the United States without having permission to be here; some evidence of involuntariness is needed to overcome the conclusion that he is in Texas on purpose and not by accident.