Decided January 28, 1908.

## STURGIS *v.* STURGIS.

[93 Pac. 696.]

APPEAL—DECISIONS REVIEWABLE—FINALITY OF DETERMINATION—IN-
TERLOCUTORY DECISIONS.

1. Const. Or., Art. VII, Section 6, provides that "the Supreme Court shall
have jurisdiction only to revise the final decisions of the circuit courts." B. & C.
Comp., Section 547, as amended by Laws 1907, p. 313 (c. 162, Section 6) provides
that "a judgment or decree may be reviewed as prescribed in this chapter
and not otherwise. An order affecting a substantial right and which in effect
determines the action or suit so as to prevent a judgment or decree therein,
* * for the purpose of being reviewed, shall be deemed a judgment or de-
cree." Section 548 provides that "any party to a judgment or decree other
than by confession or for want of an answer, may appeal therefrom." One ad-
judged a spendthrift and placed under guardianship, married in another state
without the guardian's consent, returned, and was sued for divorce; the
guardian being made a defendant so as to subject the ward's estate to the
payment of suit money and alimony. The court ordered defendants to pay
a certain amount as suit money and a specified sum monthly as temporary
alimony pending the suit. *Held*, that as against the guardian, who has no
personal interest in the divorce litigation, and no right to appeal from the
final decree in the suit, the order is a "final decision," so as to be appealable.

WHEN ORDER OR DECREE IS APPEALABLE.

2. A void order or decree is appealable; and hence, in a suit for divorce
against a spendthrift in which his guardian was made a party defendant only
to subject the spendthrift's estate to the payment of suit money and alimony,
there being no cause of action alleged against the guardian, an order directing
defendants to pay a certain amount as suit money, and a specified sum monthly
as temporary alimony pending the suit, being void as to the guardian, the court
having no jurisdiction to render a personal judgment against him, is appeal-
able.

MARRIAGE—WHAT LAW GOVERNS.

3. In general, a marriage valid where solemnized is valid everywhere, not
only in other states generally, but in the state of the domicile of the parties,
even when they left their own state to marry elsewhere to avoid the laws of
the state of their domicile.

SAME—PERSONS' ACTIONS—MERITS.

4. Marriages contrary to the laws of nature as generally recognized in
Christian countries, such as involve polygamy and incest, and marriages
which the local lawmaking power has declared shall not be allowed any va-
lidity, are exceptions to the rule that a marriage valid where solemnized is
valid everywhere.

SAME—CIVIL STATUS.

5. If the marriage of a ward takes place in this State without the consent
of the guardian, it involves the violation of the law only as to ceremony, form,
or qualification; and although the violation of the law in the issuance of the
license, making the affidavit therefor, or by the officer in solemnizing the mar-
riage, may subject the offender to punishment therefor, yet the marriage is
not by reason thereof void.

SAME.

6. Section 5216, B. & C. Comp., provides that "marriage is a civil contract
which may be entered into by males of the age of 18 years, and females of the

age of 15 years, who are otherwise capable." Section 5218 provides that "when either party to a marriage shall be incapable of consenting thereto, for want of legal age or sufficient understanding, * * such marriage is voidable, but only at the suit of the party laboring under the disability," etc. Section 503 provides that marriages declared voidable by Section 5218 shall be void from the time they are so declared by the decree. Plaintiff and defendant, a spendthrift, desired to marry; but the latter's guardian refused his consent thereto. Thereupon the parties, to avoid the marriage laws of the State, went to another state and were married. *Held*, that such marriage, being neither within Sections 5217 and 502, which specifically prohibit certain marriages, making them absolutely void, nor contrary to the law of nature as generally recognized in Christian countries, is valid, being within the general rule that a marriage valid where solemnized is valid everywhere.

DIVORCE — TEMPORARY ALIMONY — APPLICATION AND PROCEEDINGS THEREON — SCOPE OF INQUIRY.

7. A wife, in a divorce suit against her spendthrift husband, his guardian being made a party defendant, so as to subject the ward's estate to the payment of suit money and alimony, secured an order directing defendants to pay a certain amount as suit money, and a specified sum monthly as temporary alimony pending the suit. *Held*, on a motion to set aside the order, that the question as to collusion in the divorce suit between plaintiff and the ward defendant, to wrest from the guardian part of the estate, should not be tried on affidavits, since it involved the merits of the suit, and plaintiff was entitled to a full hearing and to the privilege of cross-examination of the defendant's witnesses.

GUARDIAN AND WARD—CUSTODY AND CARE OF WARD'S PERSON AND ESTATE—GUARDIAN'S LIABILITY ON CONTRACTS FOR WARD'S BENEFIT.

8. A guardian's liability upon his own contracts for the benefit of the ward is personal, and the judgment of a court rendered for such a debt is against him personally, and not against the ward's estate; and if he is compelled to pay such debt, and it was one properly made on behalf of the ward, the county court will allow it out of the ward's estate, but the liability of the estate in such a case is one to be settled in the county court.

SAME—ACTIONS—RIGHTS OF ACTION AGAINST GUARDIAN OR WARD.

9. An action cannot be maintained against a guardian upon the liability of the ward, but only against the ward; and the guardian, being a proper party, may appear and defend the action in the interest of the ward, but is not a party for the purpose of establishing a personal liability against him.

SPENDTHRIFTS—STATUTORY PROVISIONS.

10. All proceedings provided by statute relating to guardian and ward subsequent to the appointment of the guardian, apply equally to the guardianship of a spendthrift.

GUARDIANS AND WARDS—MANAGEMENT OF ESTATES.

11. The property of the ward is in the custody of the law, and is not subject to attachment or execution, and the estate is administered under the direction of the county court; the powers and duties of the guardian in the management of the estate and payment of debts being specified by the statute.

SPENDTHRIFTS—ACTIONS.

12. The liability of a spendthrift for alimony pending a divorce suit against him is not upon the contract of either the spendthrift or his guardian, but, if it exists at all, is statutory, and may be established in any competent court by judgment against the ward.

GUARDIAN AND WARD—ACTIONS—STATUTORY PROVISIONS.

13. By Sections 5276, 5277, B. & C. Comp., the personal or real estate of the ward can be converted into cash only by proper proceedings under the direction of the county court, and so the enforcement of a judgment against the ward can be accomplished only through the county court, and not by process against either the ward's estate or the guardian.

SAME—RIGHTS OF ACTION AGAINST WARD.

14. In an action for divorce against a spendthrift husband, the marriage being a valid one and the complaint stating a cause of action for divorce, it is not erroneous to allow plaintiff suit money and support pending the trial, as provided by statute, there being no suggestion that the amount is so excessive as to constitute an abuse of discretion, merely because defendant is under guardianship.

SPENDTHRIFTS—ACTIONS—GUARDIANS.

15. In an action for divorce against a spendthrift husband, his guardian being made a party defendant, so as to subject the ward's estate to the payment of suit money and alimony, an order directing defendants to pay a certain amount as suit money and a specified sum monthly as temporary alimony pending the suit, is erroneous as against the guardian, since debts against the ward can be enforced only against the estate, as provided by Section 5-75, B. & C. Comp., and not by process from the circuit court against the guardian or the ward's estate.

From Umatilla: HENRY J. BEAN, Judge.

Statement by MR. JUSTICE EAKIN.

This is a suit for divorce and alimony. Defendant W. P. Sturgis was adjudged a spendthrift by the county court of Umatilla County in 1905, being then 24 years old, and Jas. A. Fee was appointed the guardian of his person and estate, which was of the value of about $10,000. Thereafter, while such guardianship continued, viz., on January 13, 1906, plaintiff and defendant Sturgis desired to intermarry, but said guardian refused his consent thereto; and for the purpose of avoiding the marriage laws of this State, of which they were residents, they thereupon went to the State of Washington, where they were married, returning immediately. The said guardian is made a party defendant for the purpose of subjecting the estate of the defendant Sturgis to the payment of suit money and alimony. The court made an intermediate order directing that defendant pay to the clerk of the court for plaintiff as suit money $600 and $50 per month as temporary alimony pending the suit, which order the guardian thereafter moved

to set aside. Many affidavits were filed by the defendant in support of his motion, and counter affidavits by the plaintiff; said affidavits being directed to the question of the validity of the marriage, plaintiff's knowledge of the guardianship at the time of the marriage, and as to collusion between plaintiff and defendant Sturgis, in the divorce suit for the purpose of wresting from the guardian part of the estate. Upon the hearing the court modified the order, and ordered and decreed that defendants pay to the clerk of the court forthwith $150 as suit money and $50 as temporary alimony the 15th of every month pending the suit, from which order defendant James A. Fee appeals.

REVERSED.

For appellant there was a brief and an oral argument by *Mr. John McCourt.*

For respondent there was a brief and an oral argument by *Mr. John P. Winter.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. It is first insisted by the plaintiff that the order appealed from is not an appealable order. By the constitution of this State (Article VII, Section 7) it is provided that:

"The Supreme Court shall have jurisdiction only to revise the final decisions of the circuit courts."

This provision of the constitution is held in *Portland* v. *Gaston,* 38 Or. 533 (63 Pac. 1051), not self-executing, and the cases that may be appealed must be prescribed by the legislature, and therefore the provisions of the statute prescribing the cases that may or may not be appealed is conclusive. Section 547, B. & C. Comp., as amended in 1907 (Laws 1907, p. 313, c. 162, § 6), provides that:

"A judgment or decree may be reviewed as prescribed in this chapter, and not otherwise. An order affecting a substantial right and which in effect determines the action or suit so as to prevent a judgment or decree

therein, or a final order affecting a substantial right, and made in a proceeding after judgment or decree, or setting aside a judgment and granting a new trial for the purpose of being reviewed, shall be deemed a judgment or decree."

Section 548, B. & C. Comp., provides that:

"Any party to a judgment or decree other than a judgment or decree given by confession, or for want of an answer, may appeal therefrom."

The terms of this section are very general, and constitute no limitation upon the constitutional provision above quoted. Section 547, B. & C. Comp., after the first sentence, is not a limitation of the cases that may be appealed, but an enlargement thereof, by which certain orders are included within the term "judgment or decree." Therefore, if the judgment or decree comes within the terms of the constitution, viz., a "final decision," it is appealable.

Without determining whether an interlocutory order for suit money, rendered against a party to the suit, is appealable, which is not necessary to this decision, it is clear that the order or decree here is a final decision as to Jas. A. Fee, the guardian. He is not a party to the litigation. The suit is properly only against the ward, but the guardian appears in his behalf to defend for him, and not to de end any proceeding against himself, as we shall see further on; and as the order or decree is against the guardian, and he has no personal interest in the litigation and no right to appeal from the final decree in the suit, his appearance being only for the ward, therefore the decree is final as to him.

2. Furthermore, the decree is void as to the guardian, the court having no jurisdiction to render a personal judgment against him, as no cause of action is alleged against him, and a void order or decree is appealable: *Deering* v. *Quivey*, 26 Or. 556 (38 Pac. 710). In this proceeding Jas. A. Fee alone appeals on his own behalf.

3. The validity of the marriage is questioned by the guardian upon the ground that it was consummated without his consent, and that, even if valid under the laws of the State of Washington, where it was solemnized, yet, both parties being domiciled in this State and having secured the marriage in Washington for the purpose of avoiding the marriage laws of this State, the marriage is void here.   Section 5216, B. & C. Comp., provides that:

"Marriage is a civil contract, which may be entered into by males of the age of eighteen years, and females of the age of fifteen years, who are otherwise capable."

Section 5217, B. & C. Comp., prohibits certain marriages, viz., "when either party thereto had a wife or husband living at the time of such marriage; (2) when the parties thereto are first cousins or any nearer of kin to each other; (3) when either of the parties is a white person and the other a negro, or Mongolian, or a person of one-fourth or more of negro or Mongolian blood."   Section 5218, B. & C. Comp., provides that: "When either party to a marriage shall be incapable of consenting thereto, for want of legal age or sufficient understanding or when the consent of either party shall be obtained by force, or fraud, such marriage is voidable, but only at the suit of the party laboring under the disability, or upon whom the force or fraud is imposed." Under Chapter 8, relating to divorce proceedings, Section 503, B. &. C. Comp., provides that marriages declared voidable by Section 5218, *supra*, shall be void from the time they are so declared by the decree.   Section 502, B. & C. Comp., provides in effect that all marriages prohibited by Section 5217, *supra*, "shall, if solemnized within this State, be absolutely void."   Thus it will be seen by Section 5218, *supra*, that the marriage of the plaintiff and defendant Sturgis, even if solemnized in this State, would not be void, but only voidable.   The rule as gathered from the authorities seems to be that

in general a marriage valid where solemnized is valid everywhere, not only in other states generally, but in the state of the domicile of the parties, even when they have left their own state to marry elsewhere for the purpose of avoiding the laws of the state of their domicile.

4. There are two exceptions to this rule, viz., marriages which are deemed contrary to the law of nature as generally recognized in Christian countries, such as involve polygamy and incest, and marriages which the local lawmaking power has declared shall not be allowed any validity, either in express terms or by necessary implication, viz., such as are prohibited by Section 5217, B. & C. Comp: *Jackson* v. *Jackson,* 82 Md. 17 (33 Atl. 317: 34 L. R. A. 773) ; *State of Georgia* v. *Tutty* (C. C.), 41 Fed. 753 (7 L. R. A. 50) ; *Conn* v. *Conn,* 2 Kan. App. 419 (42 Pac. 1006) ; *Pennegar and Haney* v. *State,* 87 Tenn. 245 (10 S. W. 305: 2 L. R. A. 703: 10 Am. St. Rep. 648) ; *Parton* v. *Hervey,* 1 Gray (Mass.) 119; *Ex Parte Chace,* 26 R. I. 351 (58 Atl. 978: 60 L. R. A. 493) ; *Commonwealth of Mass.* v. *Graham,* 157 Mass. 73 (31 N. E. 706: 16 L. R. A. 578: 34 Am. St. Rep. 25) ; *Everett* v. *Morrison,* 69 Hun (N. Y.), 146: 23 N. Y. Supp. 377. This distinction is also referred to in *McLennan* v. *McLennan,* 31 Or. 480, at page 483 (50 Pac. 802, at page 803: 38 L. R. A. 863: 65 Am. St. Rep. 835), where Mr. Justice BEAN says:

"There is a distinction made in the books between the marriage of divorced parties declared by law incapable of remarrying and a marriage in violation of some statutory prohibition penal in its nature. In the one case the marriage is absolutely void, and in the other it is often held to be valid, although the party may be punished criminally for violating the prohibitory statute."

The marriage in this case does not come within the first exception, as being contrary to the law of nature as generally recognized in Christian countries, such as polygamy or those involving incest; neither is it one

specially prohibited by our statute: Section 5217, B. & C. Comp. Nor does our statute contemplate that such marriages as the one involved here shall be deemed void, but, if in violation of the statute, are only voidable.

5. If the marriage of a ward under guardianship takes place in this State without the consent of the guardian, it involves the violation of the law only as to ceremony, form, or qualification; and although the violation of the law in the issuance of the license, making the affidavit therefor, or by the officer in solemnizing the marriage, may subject the one so violating the law to punishment therefor, yet the marriage is not by reason thereof void. In *Parton* v. *Hervey*, 1 Gray (Mass.), 119, 122, in discussing the statutory requirements as to the ceremony, form, and qualification, the court say: "But the effect of these and similar statutes is not to render such marriages, when duly solemnized, void, although the statutory requirements may not have been complied with."

6. In *Ex Parte Chace*, 26 R. I. 353 (58 Atl. 979: 69 L. R. A. 493, 494), in discussing the status of a minor who married in another state while under guardianship, the court say:

"Furthermore, it is not clear that, even if the marriage had been solemnized in this state, it would have been void. Pub. Laws 1898-99, p. 49, c. 549, § 11, merely provides that no marriage license shall issue to a person under guardianship without the written consent of the guardian; but it by no means necessarily follows that a marriage procured without first obtaining such license would be void, although the official or other person who performed the ceremony might be liable to punishment under Section 19 of the same chapter. Coming now to the case in hand, it requires no argument to show that, even if the marriage might have been void if solemnized in this state, it is nevertheless not such a union that it can in any sense be considered so subversive of good morals, or so threatening to the fabric of society, as to fall within the exception to the general rule regarding

foreign marriages. In other words, .if valid in Massachusetts, it is equally valid here."

The case of *Hills* v. *State,* 61 Neb. 589 (85 N. W. 836: 57 L. R. A. 155), is to the same effect, and in an exhaustive note to that case in 57 L. R. A. 155, in discussing the matrimonial capacity of the parties, it is suggested that most of the decisions that seem to hold that the law of the domicile of the parties determines their matrimonial capacity "are reducible to one or the other of the exceptions * * to the general principle that the validity of the marriage is to be determined by reference to the *lex loci,* namely, (1) marriages which are polygamous, or are incestuous according to the general view of Christendom; (2) marriages which the local lawmaking power has declared shall not be allowed any validity. By the first exception the Christian standard of marriage is applied to every marriage wherever celebrated, and without reference to the domicile of the parties at the time of its celebration. If the marriage falls below this standard, it will be held void, although it may be valid according to the *lex loci* and *lex domicilii."* We conclude, then, that the validity of the marriage is beyond question.

7. The question as to the collusion between plaintiff and de endant Sturgis to secure a divorce, is one that should not be tried out by affidavits under this collateral issue, as it involves the merits of the suit for divorce. It can be made an issue in the case and tried upon the evidence; but plaintiff is entitled to a full hearing and the privilege of cross-examination of the defendant's witnesses.

8. But it is more difficult to determine the extent of the liability of the guardian in such a proceeding as this. A guardian's liability upon his own contracts for the benefit of the ward is personal, and the judgment of a court rendered for such a debt is against him personally, and not against the ward's estate: *Pendexter*

v. *Cole,* 66 N. H. 556 (22 Atl. 560) ; *Baird* v. *Steadman,* 39 Fla. 40 (21 S. 572) ; *Lewis* v. *Edwards,* 44 Ind. 333; *Sanford* v. *Phillips,* 68 Me. 431; *Rollins* v. *Marsh,* 128 Mass. 116; *Municipal Court* v. *Le Valley,* 25 R. I. 236 (55 Atl. 640) ; 15 Am. & Eng. Enc. Law (2 ed.), 77; and if he is compelled to pay such debt, and it was one properly made on behalf of his ward, the county court will allow it out of the ward's estate; but the liability of the estate in such a case is one to be settled in the county court: *Pendexter* v. *Cole,* 66 N. H. 556 (22 Atl. 560).

9. An action cannot be maintained against a guardian upon the liability of the ward, but only against the ward, and, the guardian being a proper party, he may appear and defend the action in the interest of the ward, but is not a party for the purpose of establishing a personal liability against him: *Rollins* v. *Marsh,* 128 Mass. 116; *Municipal Court* v. *Le Valley,* 25 R. I. 236 (55 Atl. 640) ; *Raymond* v. *Sawyer,* 37 Me. 406; *Stumph* v. *Goepper,* 76 Ind. 323; *Baird* v. *Steadman,* 39 Fla. 40 (21 S. 572).

10. We make no reference here to the question of the personal liability of a guardian *ad litem* or a general guardian for costs in a suit prosecuted or defended by him, if such litigation is decided adversely to him. All proceedings provided by statute relating to guardian and ward subsequent to the appointment of the guardian apply equally to the guardianship of a spendthrift. This statute makes no special provision in relation to actions or judgments against the guardian, the ward, or his estate.

11. The property of the ward is in the custody of the law, and is not subject to attachment or execution (1 Freeman, Executions [3 ed.], Section 131; *Harrington* v. *La Rocque,* 13 Or. 344: 10 Pac. 498), and the estate is administered under the direction of the county court; the powers and duties of the guardian in the manage-

ment of the estate and payment of debts being specified in the statute.

12. Without deciding whether an ordinary creditor of the ward's estate may, in the first instance, bring an action therefor, it appears that this is not a liability upon the contract of either the ward or the guardian; but, if there is a liability, it is statutory, and may be established in any competent court by judgment against the ward. *Gregg* v. *Gregg,* 48 Hun, 451 (1 N. Y. Supp. 453). The payment by the estate, if judgment is obtained, may depend upon various contingencies, such as whether the estate has available money, or it must be procured from the sale of personal assets or from the sale of real estate, or whether the estate is sufficient to pay all the debts and liabilities of the ward or can only make a *pro rata* payment and render it necessary that the payment even of a judgment be secured through the county court.

13. By Sections 5276, 5277, B. & C. Comp., the personal or real estate of the ward can be converted into cash only by proper proceedings under the direction of the county court: *Coffin* v. *Eisiminger,* 75 Iowa, 30 (39 N. W. 124) ; *Bates* v. *Dunham,* 58 Iowa, 310 (12 N. W. 309) ; *Grant* v. *Humbert,* 114 App. Div. 462 (100 N. Y. Supp. 44). This is the policy of our whole probate law with reference to estates of deceased persons, as well as to those under guardianship. Therefore the enforcement of a judgment against the ward can be accomplished only through the county court, and not by process against either the ward's estate or the guardian.

14. The marriage being valid, and assuming for the purposes of this proceeding that the complaint states a cause for suit for divorce, we see no reason why the plaintiff is not entitled to the provisional remedies of the statute, if otherwise entitled thereto, even though the defendant is under guardianship; and, in so far as the order of the court grants her suit money and sup-

port pending the trial as against the defendant Sturgis, there is no error, there being no suggestion that the amount is so excessive as to constitute an abuse of discretion by the lower court.

15. But to the ·extent that the order is personal against the guardian it is erroneous. The order of judgment establishes the debt or liability against the ward; but it can be enforced only against the estate as provided by Section 5275, B. & C. Comp., and not by process from the circuit court against the guardian or the ward's estate.

The decree will be reversed, in so far as it affects the guardian personally.        '        REVERSED.