Argued June 29, affirmed September 27, 1921.

In Re Estate of FRED PAQUET, Deceased.

(200 Pac. 911.)

**Constitutional Law—Marriage—Statute Prohibiting Mixed Marriages Valid.**

1. Sections 2163–2165, Or. L., prohibiting marriages between white persons and Indians, negroes, or Chinese, etc., are not unconstitutional as discriminating between the races.

**Marriage—Burden upon Full-blooded Indian to Show Valid Marriage With White.**

2. There is no legal presumption that a white man and full-blooded Indian woman living together for 30 years were married, in view of Sections 2163–2165, Or. L., prohibiting the intermarriage of white persons and Indians of more than the half blood, and, in

a proceeding by the Indian to be appointed administrator of the white person's estate, the duty devolves upon her to allege and prove that she was his lawful wife.

**Marriage—Rule as to Validity of Marriage Valid According to Custom of Place Held Inapplicable.**

3. In a proceeding by a full-blooded Indian woman to be appointed administrator of the estate of a white man with whom she had lived for thirty years, the rule that a marriage, valid according to the law or custom of the place where contracted, is valid, did not apply where an alleged marriage according to Indian custom took place at a place in the state where the state had original and exclusive jurisdiction and both parties then lived and mingled with the white people as ordinary citizens of the state, and neither the government nor any Indian tribe had any control or jurisdiction over the place, in view of Section 2163, Or. L., prohibiting marriage between whites and Indians of more than the half blood.

**Executors and Administrators—Brother as Only Relative Entitled to Administer Estate.**

4. A brother who is the only relative of a decedent, if otherwise qualified, is entitled to administer upon his estate.

From Tillamook: George R. Bagley, Judge.

Department 1.

September 30, 1919, Ophelia Paquet filed a petition in the County Court of Tillamook County to be appointed as administratrix of the estate of Fred Paquet, in which she alleges that he died in that county on September 27, 1919, of which he was then a resident and left personal property there of the value of $500 and real property of the probable value of $12,000; that the petitioner is his widow; that she resides in Garibaldi in said county and is about 65 years of age; that she is living on the real property which was the home of the deceased during his lifetime, and is now in possession of it; that she is a suitable, competent person to administer the estate and "that there has never been any children born to

3. Validity of common-law marriage in American jurisdictions, see notes in 124 Am. St. Rep. 104; Ann. Cas. 1912D, 598; Ann. Cas. 1917E, 252.

the said deceased and this petitioner." Based upon the petition the County Court made an order appointing her administratrix of Fred Paquet's estate.

October 1, 1919, John B. Paquet filed his petition in the County Court alleging jurisdictional facts and claiming that he was a brother of the deceased and naming certain other heirs and alleging:

"Your petitioner further shows that the said Ophelia Katata, calling herself Ophelia Paquet, is not the wife of the deceased and was never the wife of the said deceased and is in no way related by blood or marriage to the deceased and that the allegations in said petition are false. That your petitioner is a brother to the deceased and his next of kin, and the only next of kin residing in the State of Oregon. That said Ophelia Katata is a full-blood Indian woman and that the deceased Fred Paquet was a white man."

In her reply Ophelia Paquet admits that the parties named in the petition of John B. Paquet are related to the deceased Fred Paquet as therein alleged and otherwise makes a general denial of its material allegations and further alleges that she was the wife of Fred Paquet, deceased, is now his widow and sole heir and is entitled to administer on his estate. After the testimony was taken, on January 3, 1920, the County Court made findings of fact and conclusions of law, upon which it was adjudged and decreed that Ophelia Paquet should be removed and that the petitioner John Paquet should be appointed as administrator of the estate of Fred Paquet, deceased. From this decision an appeal was taken to the Circuit Court and after a transcript of the pleadings and the evidence was filed and while the appeal was pending in the Circuit Court and before trial, Ophelia Paquet filed a motion in the Circuit

Court for leave to take testimony or for a ruling upon the County Court to take further evidence,

"for the purpose of supplying the omission and lack of evidence heretofore taken in this cause as shown by the transcript filed herein, showing that the appellant was a member of a tribe of Indians then existing and being in and around Tillamook Bay, and in the vicinity of the place where she was married and subsequent residence and that at said time and prior thereto and afterwards, there existed a head or chief of and to said Indian tribe,"

and to further show that said tribe regulated its own domestic affairs. The affidavits of Frank Hobson and W. S. Cone were attached to and made a part of the motion. The motion was overruled and on May 15th, the Circuit Court rendered a decree affirming the decision of the County Court, from which Ophelia Paquet appealed, claiming: (1) That the court erred in holding that her marriage with Fred Paquet was void; (2) "in not finding and holding that the marriage between appellant and said Fred Paquet, some thirty years ago in Oregon according to Indian rites and custom she being a full-blooded Indian woman, he being a full-blooded white man, was valid"; and (3) in not rendering a decree in favor of the appellant. After Ophelia Paquet was removed as administratrix and John Paquet was appointed and qualified, claiming to be a creditor, I. N. Henkle filed his petition in the County Court in which he alleged that John Paquet is of unsound mind, insolvent, of immoral character and is not competent to administer the estate, and prayed for his removal and that he be appointed as administrator. Based upon this, a citation was issued to John Paquet, who appeared and filed an answer in

the nature of a general denial. On such issues a trial was had in the County Court and it made an order removing John Paquet, from which an appeal was taken to the Circuit Court and on that question the Circuit Court reversed the County Court and reinstated John Paquet as administrator. From that decision Henkle appealed to this court. The attorneys stipulated that both cases should be consolidated and tried here as one.          AFFIRMED.

For appellants there was a brief and oral arguments by *Mr. T. H. Goyne* and *Mr. Webster Holmes.*

For respondents there was a brief over the name of *Messrs. Johnson & Handley,* with an oral argument by *Mr. S. S. Johnson.*

JOHNS, J.—It is conceded that John is a brother of Fred Paquet, deceased, that both of them were *bona fide* residents of Tillamook County and that if Ophelia was not the lawful wife of Fred Paquet, John is his only living relative residing in the State of Oregon. The primary questions involved here are: (1) Whether or not Fred and Ophelia were husband and wife and (2) whether John is a competent and suitable person to administer upon the estate. Although the evidence is conclusive that Ophelia and Fred lived together as husband and wife and that he recognized and treated her as such, it is not claimed that they were ever legally married under the statutory law of any state. It is also conceded that Fred Paquet was a white man and that Ophelia was a full-blooded Indian woman. Section 2163, Or. L., provides:

"Hereafter it shall not be lawful within this state for any white person male or female, to intermarry with any negro, Chinese, or any person having one fourth or more negro, Chinese, or Kanaka blood, or any person having more than one half Indian blood; and all such marriages, or attempted marriages, shall be absolutely null and void."

Section 2164 enacts that if any white person or Indian within the degree forbidden in Section 2163 shall knowingly intermarry under any of the forms legalized by the state, upon conviction they "shall be punished by imprisonment in the penitentiary or county jail not less than three months nor more than one year." Section 2165 provides:

"If any person authorized to license marriages or to solemnize marriages within this state shall willfully or knowingly license, marry, or attempt to marry any of the persons forbidden to marry by Section 2163, such person or persons, upon conviction thereof, shall be imprisoned in the penitentiary or county jail not less than three months nor more than one year, and be fined not less than $100, nor more than $1,000."

1, 2. The appellant contends that such statutory provisions are unconstitutional and void. R. C. L., Volume 8, Section 381, says:

"Miscegenation is a purely statutory offense, consisting in the intermarriage of a person of the white race with a negro or a colored person. Most states in which the negro or colored people form an appreciable element have enacted these laws inhibiting intermarrying between the white and black races, and the offense thereby created is usually of the grade of a felony. There can be no doubt as to the power of every country to make laws regulating the marriage of its own subjects; to declare who may marry, how they may marry, and what shall be the legal consequences of their marrying; and ac-

cordingly although miscegenation statutes have been persistently attacked on the ground that they are violative of the United States Constitution they have been universally upheld as a proper exercise of the power of each state to control its own citizens."

Appellant also contends that "an Indian has the same right as a white person, and any statute of the state, attempting to abridge their rights of marriage, in any manner, is void." It will be noted that the statute does not discriminate. It applies alike to all persons either white, negroes, Chinese, Kanaka or Indians. The proof is conclusive that the parties have been continuous residents of Tillamook County, Oregon, for more than 30 years. There is no legal presumption that either of them would violate the law or commit a crime and under the above sections of our statute, their marriage in this state would be a crime and "absolutely null and void." Ophelia, claiming to be the wife of Fred Paquet, a white man, and it being admitted that she is a full-blooded Indian, the duty devolves upon her to allege and prove that she was his lawful wife. Appellant relies upon *Leefield* v. *Leefield,* 85 Or. 287 (166 Pac. 953). That decision construed and was founded upon Sections 7017, 2098, and 502, L. O. L. The parties there were first cousins and notwithstanding the provisions of the statute, they were married in the State of Washington, and the opinion says:

"That such a construction of the statute might, as in this instance, induce prohibited persons temporarily to leave Oregon in order to evade the laws thereof and go to some other state to consummate a marriage which if celebrated in this state would be void is a legislative question with which the courts have no right to meddle."

The opinion quotes from *Sturgis* v. *Sturgis*, 51 Or. 10–15 (93 Pac. 696, 131 Am. St. Rep. 724, 15 L. R. A. (N. S.) 1034), where it is said, "nor does our statute contemplate that such marriages as the one involved here shall be deemed void, but, if in violation of the statute, are only voidable." In the instant case there is no claim that the parties were married in another state. In fact, it is claimed that they were married in Tillamook County, Oregon, in accord with an Indian tribal custom and that such marriage is valid. There is some indefinite, uncertain testimony tending to show that Fred Paquet paid Ophelia's mother $50 for her daughter and that under the Indian custom, followed by marital relations, this would constitute a valid marriage and make them husband and wife. Upon that point appellant relies upon *McBean* v. *McBean*, 37 Or. 195 (61 Pac. 418), and *Kalyton* v. *Kalyton*, 45 Or. 122–124 (74 Pac. 491, 78 Pac. 332). On page 202, in *McBean* v. *McBean*, this court says:

"As a general proposition, it is well settled that a marriage valid according to the law or custom of the place where it is contracted is valid everywhere: Story, Confl. Laws, § 113. And it is the adjudged policy of the law to treat the Indian tribes who adhere to their peculiar customs, as separate communities or distinct nationalities, with full and free authority to manage their own domestic affairs, and to pursue their own peculiar habits and customs, especially as it concerns the marriage relation. And this is so although their territory is located within the state lines, and the federal government manages their affairs through agencies designated for the purpose. Nor are they regarded as subject to the state laws."

On page 203, it is said:

"At the time of the alleged marriage the Territory of Washington had been set apart by Congress and provided with a form of government, but some of the Indian tribes, yet maintaining their distinct tribal customs, among whom may be designated the Cayuses, Walla Wallas, Umatillas, and Nez Perces, still occupied, without relinquishment of the Indian title, a large portion of the territory, which included Fort Walla Walla within its boundaries."

3. That is not this case. Ophelia was one of a small remnant of what is known as the Clatsop Indians, who once lived in and around Seaside in Clatsop County. At the time of the alleged marriage she was living with her mother at Garibaldi in Tillamook County. She was not living on a reservation and was not a ward of the United States government, in fact the alleged marriage took place within Tillamook County and at a place where the state would have original and exclusive jurisdiction over any marriage contract between them, and both parties then lived and mingled with the white people as ordinary citizens of the state. Neither the government nor any Indian tribe had any control or jurisdiction over the place of the alleged marriage. Under appellant's contention, if an Indian woman without regard to her actual residence was a member of one tribe and should marry a white man under an Indian custom, such a marriage would be valid and Section 2163 would be a nullity. That is not the law. As in this case where both parties and the alleged marriage were within the original and exclusive jurisdiction of the state, they are subject to and are bound by the state law. Such a marriage would only be valid where Indians lived together under

101 Or.—26

the tribal relation and a tribal form of government and for the reason that they would then be subject only to the jurisdiction of Congress. After the appeal was taken from the County Court to the Circuit Court and based upon affidavits, the appellant asked for leave to offer testimony that she was a member of a tribe of Indians in and around Tillamook Bay at the time of her marriage and that there was a chief of the Indian tribe. We have carefully read the affidavits and assuming all the facts therein stated to be true, it would not bring the instant case within the law of this court in *McBean* v. *McBean*, above quoted. Upon the record, we hold that Ophelia was never the lawful wife of Fred Paquet.

4. Being the only relative in the state, if otherwise qualified, John was entitled to administer upon his brother's estate. Henkle was never a personal creditor of Fred Paquet. His only claim against the estate is for funeral expenses. Upon the petition of Henkle, the County Court removed John Paquet as administrator, which ruling was reversed by the Circuit Court. It is true that there is some testimony against his ability and reputation, but a large number of respectable citizens testified that he was an honorable man and well qualified to act as administrator. The main value of the estate is in real property which cannot be sold without an order of the probate court and we must assume that it would protect the interests of all parties. In both appeals, the opinion of the lower court is affirmed.

Legally, Ophelia was not the lawful wife of the deceased, yet the record is conclusive that she lived with him as a good and faithful wife for more than thirty years. Although the question is not before this court, the writer feels that in the interests of

justice, a fair and reasonable settlement should be made. In the case of *Ophelia Paquet* v. *John Paquet,* neither of the parties will recover costs. Costs will be allowed to the respondent in the Henkle case.

AFFIRMED.

BURNETT, C. J., and HARRIS and McBRIDE, JJ., concur.

---

'Argued' July 1, affirmed September 27, 1921.