## LOUSSAC v. JACOBSEN.

Third Division.   Valdez.   March 24, 1927.

No. 1252.

**1. Attachment ☞228—Void Judgment.**

An attachment of property, made on a void judgment based on a complaint which does not state any cause of action against the defendant, discharged.

**2. Attachment ☞64—Execution ☞55—Garnishment ☞61—Guardian and Ward—Insane Persons.**

Moneys and other chattels, in possession of administrators, executors, and guardians in their official capacity, are almost universally conceded to be in the custody of the law, and are therefore neither subject to any levy under execution nor to any process of garnishment or attachment.

**3. Attachment ☞64—Insane Persons.**

Suit was begun by complaint against an insane person, for whom a guardian had then been appointed by the probate court in the proper precinct in Alaska.  His property was attached on the judgment.  On appeal, *held*, the judgment and attachment were void because, at the time both were entered, the property of the insane person was in the custody of the law; attachment vacated.

The facts in this case are stated in an opinion filed in deciding the motion to dismiss an appeal taken by the defendant from the judgment of the justice court of Anchorage precinct and the motion for perpetual stay of execution under said judgment.   The court found it necessary under the mandatory requirement of the Code to dismiss the appeal and enter judgment as given in the lower court, but, on motion of the defendant, granted a perpetual stay of execution on the ground that the judgment rendered by the justice of the peace was void, because no valid process had been served and the complaint failed to state any cause of action against the defendant.

Thomas C. Price, of Anchorage, for plaintiff.
W. H. Rager, of Anchorage, for defendant.

RITCHIE, District Judge.   While the case was pending in the lower court, a writ of attachment was issued and certain personal property belonging to Dr. George C. Maule, named in the plead-

ings in the case, was attached. The defendant now comes and asks that this attachment be discharged, as the court has held the judgment void and has perpetually stayed execution. It appears that the motion to discharge the attachment ought to be granted, as otherwise the marshal might feel obliged to hold the attached property in possession indefinitely. The difficulty in the way of discharging the attachment is suggested by the language of section 983 of the Code, which provides that the defendant may at any time before judgment apply for discharge of an attachment. This might appear to be an insuperable obstacle to granting the discharge, because the judgment has already been entered; but, as the court has held that the judgment is void, and therefore no judgment, it appears to me fair to say that a discharge of the attachment at this time is an action taken before judgment.

I think, also, that authority is vested in the court to grant this motion by virtue of section 1555 of the Code, which provides as follows: .

"Sec. 1555. When jurisdiction is by any law of the United States conferred on a court or judicial officer, all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding be not specially pointed out by this code, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

The illegality of the entire proceeding of the justice court in this case, it seems to me, is demonstrated by the authorities quoted in the previous opinion herein and in the brief of counsel in support of the motion to discharge in attachment. This brief reads as follows:

"1. No attachment can be lawfully made under our laws unless and until a complaint has been filed stating a cause of action against the defendant. This is elementary. And it is equally elementary that the complaint must state a cause of action against the person whose property is attached. The property of the defendant only may be attached. The record shows that the complaint is fatally defective in each of the following material particulars:

. "(a) The complaint does not state any cause of action against any person therein named as a party;

"(b) The property of the person named as defendant in said action was not attached; and                                        .

"(c) The property attached was and is the property of a person not named as a defendant, and for whose appearance no summons had been issued.                                        .

"2. The law provides that an order for sale of the attached property may be incorporated in the judgment; otherwise, the attachment

falls. Such an attempted order was incorporated in the judgment of the court below. But that judgment was void. When we come into the district court, it is found that not only is the complaint a nullity, but that there is a total lack of jurisdiction of the person whose property was attached, and the judgment of the district court (made, of necessity, upon dismissal of the appeal, which requires that judgment be given as in the court below) is also void. So, to support this pretended attachment, we have a void complaint (in effect, no complaint) and a void judgment (in effect, no judgment).

"3. The court in this action has heretofore declared the judgment to be void, and has permanently stayed execution. Therefore the attached property cannot be sold, nor can any proceedings be taken against it. If the judgment was void, the attachment must necessarily have been void, the defect being jurisdictional.

"4. The plaintiff's complaint alleges that the defendant had been appointed guardian of Dr. Maule as an insane person prior to the time of the filing of the complaint, and that Dr. Maule had been 'duly adjudged insane in the probate court for the Cordova precinct.' The face of the record, indeed, the plaintiff's verified complaint, shows the insanity of Dr. Maule and the appointment of Mr. Jacobsen as his guardian.

"Our Code made circumstantial provisions for the care and custody of the property of an insane person. The guardian must pay claims against the insane person, and may sell the property of such insane person for that purpose. The provisions of our Code were copied almost, if not entirely, verbatim from the Oregon laws. Therefore, we think the decisions of the Supreme Court of Oregon, when made prior to June 6, 1900, controlling, and, when made after that date, highly persuasive.

"In the case of Harrington v. La Rocque, 13 Or. 344, 10 P. 498, decided April 6, 1886, the Supreme Court of Oregon cites with approval Freeman on Execution, as follows:

" 'Moneys and other chattels, in the possession of administrators, executors, or guardians, in their official capacity, are almost universally conceded to be in the custody of the law, and are therefore neither subject to levy under execution nor to any process of garnishment.'

"This but announces the almost universal rule. When Dr. Maule was declared insane and his guardian was appointed, all of Dr. Maule's property was in the custody of the law, the custody of the probate court for the Cordova precinct; and such property, therefore, was not subject to attachment. The attachment was void.

"And in the later case of Sturgis v. Sturgis, 51 Or. 10, 93 P. 696, 15 L. R. A. (N. S.) 1034, 131 Am. St. Rep. 724, decided January 28, 1908, the Supreme Court of Oregon held that, while an action might be brought against an insane person and his liability for the debt thus established, no execution could issue or other levy be made.

"The court said: 'But it (i. e., the judgment) can be enforced only against the estate (of the ward) as provided by B. & C. Comp. § 5275, and not by process from the circuit court against the guardian or the ward's estate.' In other words, no execution may issue on any judg-

ment obtained against an insane person under guardianship, his property already being 'in the custody of the law.'

"The Oregon court refers to 'B. & C. Comp. § 5275.' This section of the Oregon law so referred to is identical with section 1734 of the Compiled Laws of Alaska. This section provides:

" 'Every guardian appointed under the provision of this chapter shall pay all just debts due from his ward out of his personal estate, if sufficient, and if not, out of his real estate, upon obtaining a license for the sale thereof, as provided by law. He shall also settle all accounts of the ward, and demand, sue for, and receive all debts due him, or may, with the approbation of the commissioner, compound for the same and give a discharge to the debtor upon receiving a fair and just dividend of his estate and effects, and he shall appear for and represent his ward in all legal actions and proceedings, unless when another person is appointed for that purpose as guardian or next friend.'

"So that, even if a valid judgment had been obtained in the case at bar, no attachment of the ward's property could have been lawfully made, and no execution issued or served. In the hands of the guardian, or even in his constructive possession as such guardian, the property was in the 'custody of the law' and not subject to attachment. It follows that the attachment was void on this ground also. The guardian is now entitled to possession of the attached property so that it may be used, if necessary, to pay the debts of the ward."

The record in justice court shows a proceeding which is best analyzed by giving it the description of the earth before creation as set forth in the book of Genesis; it is "without form and void." To allow that record to become the basis of any transfer of a property right would be a perversion of law and a miscarriage of justice. The motion to discharge the attachment is granted.