# TRUTCH *v.* BUNNELL.

ESTATES OF MINORS CANNOT BE MORTGAGED.—Sec. 869, p. 283 of the code
of civil procedure, which provides that the county courts shall have
jurisdiction pertaining to a court of probate, (sub. 6) "To order the
renting, sale or other disposal of the real and personal property of
minors," confers no power on the county court to authorize the guard-
ian of minors to mortgage the real estate of his wards.

APPEAL from Multnomah County.

*E. W. Bingham and A. C. Gibbs*, for appellants.

*Northrup and Gilbert*, for respondent.

By the Court, WALDO, J.:

This is a suit to foreclose a mortgage of the north half of
block 8 in the city of Portland.   The property belonged to
minors, and was mortgaged by their guardian, acting under
the order of the county court of Multnomah county, to
secure the payment of a promissory note for $12,000, dated
December 1, 1873.   Said note was signed "D. D. Bunnell,
guardian of Mezaldus Scott, Fred Scott, Melvern Scott,

Oceana Scott and Robert Scott, minors and wards of said guardian."

This same mortgage was before this court in *Trutch* v. *Bunnell*, 5 Or., 504. It is now conceded that there was no adjudication in that case because of jurisdictional defects in the proceedings. This suit was, therefore, brought to foreclose the same mortgage. In order to maintain the suit it is necessary for counsel for respondent to concede that the former proceedings were *coram non judice*. Yet they rely on the opinion delivered in that case as a judicial exposition of the law by this court, and as a precedent to be followed in the decision now to be made. Counsel say in their brief: "The force of that decision (*Trutch* v. *Bunnell*) is not broken by the fact that the parties to the present suit have admitted that in the former suit the court had no jurisdiction of the parties defendant. It remains the decision of the supreme court. It has not been set aside or adjudged illegal or void. It is a precedent just as binding and entitled to the same respect as any other decision of this court." Counsel for the appellants were unable to see how a decree so called should be void as a decree and yet conclusive on the matter attempted to be adjudicated, as a precedent. It certainly seems clear that as now presented the opinion can not be regarded in any other light than as an extra judicial opinion. There can be no precedent without a decision; and, according to the principles of the common law, an opinion on a matter not in judgment before the court is not a decision. (Curtis, J., *Carroll* v. *Carroll*, 16 How., 287.) Judicial power is vested in courts, not in the officers thereof. (Judge O. C. Pratt's Opinion on the Location Law, app. to Council Journal, 3d session, Oregon Territory; 12 Ind., 583.)

In *Brumley* v. *The State*, 20 Ark., 78, it is said, "In the

case at bar the judge under the circumstances was clothed with no judicial authority to sit in judgment upon the rights of appellant—there was no court, and, consequently, no judgment." Where the court has no right to decide at all, for want of jurisdiction, there is no judgment. (Marshall in argument, *Pickett* v. *Morris*, 2 W. Va., 271.) If *coram non judice*, the sentence is as if not pronounced." (Marshall, C. J., *Rose* v. *Himley*, 4 Cr., 278.)

Whatever, says Hobart, a jury "do try besides the issues, is *per non juratos*, as a case judged by the court that hath no jurisdiction of the cause: *coram non judice* and utterly void." (Hob. 53.) "Where there is no jurisdiction at all there is no judge, the proceeding is as nothing." (*Perkin* v. *Proctor*, 2 Wells., 386.

It follows that a court without jurisdiction cannot render a decision, and consequently, cannot make a precedent. We must decide the question before us as one which has received no judicial exposition in this state. We have no right to follow the extra judicial construction in 5 Or., 504, against our own convictions. To do so would be plainly to deprive the appellants of their property contrary to the law of the land.

The authority of the guardian to execute the note and mortgage was founded on an order of the county court of Multnomah county. The power of the court to make such order is supposed to have been conferred by sub. 6 of sec. 869, Gen. Laws of Oregon, 1874, p. 283, which provides that the county court, as a court of probate, has power "to order the renting, sale or other disposal of the real and personal property of minors." Let it be conceded that, without further legislation, plenary power is conferred on the county court by this subdivision to order the sale or other disposal of the real or personal property of minors. The position counsel

for respondent then take is that the powers conferred are broad enough to authorize the court to order the execution of a mortgage to secure money borrowed by the guardian of minors and invested in buildings to rent erected on their real estate. That is the proposition of counsel as stated to meet the facts in this case. It is unnecessary to enter into the case beyond this proposition; for the case is met at the outset with a fatal objection. The power, generally, to sell or dispose of the real and personal property of minors, whether conferred by a testator by will or upon a court by a public statute, confers no power to mortgage. The weight of modern authority for this position is decisive. The construction put on language like this in a private instrument cannot be more stringent than that put on a statute in derogation of the common law, giving power to divest infants of their inheritance. The power to mortgage must be plainly and unequivocally conferred. If not conferred in special words, it must be necessarily implied in powers actually conferred.

Now it is a fundamental principle in the law of powers that the donor of the power can exercise it only to the extent actually conferred, and as conferred. Thus in *Hoyt* v. *Jacques*, 129 Mass., 287, it was held that a power in a will to sell real estate, if necessary for the maintenance of the devisee, did not authorize the devisee to mortgage the estate for his maintenance. The same principle was laid down in very strong terms in *Ferry* v. *Laible*, 31 N. J. Eq., 566. In a note to the case, *Page* v. *Cooper*, 16 Beav., 396, is cited, where it was held that a power to sell and dispose of real estate, and out of the proceeds "to levy, raise and pay" two sums, and to invest the residue, did not authorize a mortgage.

In *Stokes* v. *Payne*, 58 Miss., 614, S. C. 38, Am. Rep.,

340, a power in a will to "sell and dispose" of real property when it appeared advisable to do so for the education and support of children, was held not to warrant a mortgage. In *Albany Ins. Co.* v. *Bay*, 4 N. Y., 26, it was laid down that a devise to trustees to sell and dispose of real estate in fee simple or otherwise as T. should direct, did not empower the trustees to mortgage.

The power to mortgage, as a mortgage is construed in this state, is incidental to another power—the power to borrow money. Before there can be a power to mortgage there must be a power back of the mortgage to contract the debt which the mortgage is given to secure. A power to give a mortgage to secure the payment of money without a power to borrow the money is a contradiction. Now, a promissory note simply given by a guardian, with or without the authority of the county court, for money borrowed and invested for the benefit of the ward, is certainly void. How surprising, then, that a contract, by which money was borrowed, should be a nullity, while a mortgage given to secure the performance of this void contract, should be entirely valid. Or that a promissory note should be void unless a mortgage should be given to secure its payment. Counsel have thrown no light on this difficulty.

That the power to sell, generally, will not authorize a mortgage, is conclusively settled in this country by late adjudications. Nor can the power to order the "other disposal" of the real estate, be construed into a power to mortgage. This word disposal has no technical meaning. But we know that it must receive a strict construction, and that its sense must be determined by the context. In this connection the maxim *noscitur a sociis* applies. The disposal must be of the same character as a sale—that is, a transfer of the estate. But in this state a mortgage is not a condi-

tional sale, and therefore transfers no estate. A mortgage of real estate creates a power which may lead to a disposal, but is not itself a disposal of real estate. The American theory of mortgages and securities, and not estates, makes what we term foreclosure proceedings really collection proceedings. (*Fitzhugh* v. *Maxwell*, 34 Mich., 144.) A disposal is affected by a foreclosure and sale, but a county court has no power to order a foreclosure and sale. A foreclosure in the circuit court is not a disposal by order of the county court.

The power to dispose implies and requires a disposal for full value. It might, possibly, authorize an exchange. (*Phelps* v. *Harris*, 101 U. S., 380.) But if a mortgage can be made, the estate becomes liable to a forced sale. Thus in *Hoyt* v. *Jacques*, above, the court say, "the two transactions of a sale and a mortgage are essentially different. A power to sell implies that the attorney is to receive for the benefit of the principal a fair and adequate price for the land; a power to mortgage involves a right in the attorney to convey land for a less sum, so that the whole of the estate may be taken on a foreclosure for a part of its value." This argument is quite applicable under our statute, for property is quite liable when sold at a forced sale to be taken for a part of its value.

A writer in the Canadian Law Jour., vol. 1, p. 76, says, "The maxim *omne majus continet in se minus* is also sometimes quoted in support of the power to mortgage, a maxim, the truth of which as a mathematical principal is indisputable, but which as a proposition of law must not be too much relied upon. * * * We may say of this as has been said of another frequently quoted maxim, the maxim can never be applied until the law is ascertained, and when it is the maxim is superfluous." So in *Contant* v. *Servoss*, 3

Barb., "a mortgage is now considered as a mere pledge or security for money. It is not a sale nor any part of it. It is not even a conditional sale, for that imports that the title would vest on the happening of the conditions. That is not so in the case of a mortgage. There no title vests until a subsequent sale is actually made." In this last case a conveyance to John Pintard "in trust for his two infant grandsons, John Pintard Servoss and Elias Boudinet Servoss, with power to the grantee to grant, bargain, sell, and convey those lots, or any part thereof, for such sum or sums, and at such times as to him should seem proper, and to make and execute all necessary conveyances in the law for the same for the benefit of said infants," was held not to confer a power to execute a mortgage.

It follows that the power to mortgage can not be deduced from the statute, either from the word sale or from the word disposal. A power to mortgage is neither necessarily implied in the word disposal, nor does its association with the word sale indicate that any such interpretation can be legitimately put upon it. The silence of the statute as to mortgaging, when treating of the powers and duties of guardians, can receive but one interpretation—that no such power was supposed to have been conferred. The failure to make provision for the important subject of mortgages on the real property of infants, if not conclusive of the want of such power as contended by counsel for appellants, is entitled to considerable consideration as showing the intent of the legislature and probable meaning of the statute.

Counsel for the respondent cited the text of Barbour's Ch. Prac., 218, and Hoffman's Ch. Prac. The text of Barbour referring to the section of the revised statutes that any infant seized of any real estate, or entitled to any term for years in any lands may by his next friend or guardian

apply to the court of chancery for the sale or disposition of his property, and to another provision of the statutes for the sale of the real property of minors, says: "These provisions have always been construed as conferring upon the court the power to direct the real estate of infants to be mortgaged." Now the doctrine of the text seems at one time to have been the doctrine of the courts of chancery. A mortgage was held to be a conditional sale, and a power to sell was, therefore, held to imply a power to mortgage. This construction was announced in 1724, in *Mills* v. *Banks*, 3 P. Wills, 1, where counsel had argued that the word selling implied mortgaging, and the court in an *obiter dictum* said, "a power to sell implies a power to mortgage, which is a conditional sale." This doctrine thus broadly laid down is no longer law in England. (See *Ferry* v. *Laible*, 31 N. J. Eq., 574; Canadian Law Times 1, 23.) It was long ago denied as a general rule in New York, and the case of *Williams* v. *Woodward*, 2 Wen., 492, in which *Mills* v. *Banks* was cited with approval, was overruled in *Bloomer* v. *Waldron*, 3 Hill, 361. See note to *Williams* v. *Woodward*, 3 Wen., and *Contant* v. *Servoss*, 3 Barb., 141.

When a mortgage ceased to be looked on as a conditional sale, it no longer became possible to derive a power to mortgage from a power to sell. Thus the Canadian Law Times, above cited, says: "There is one general ground on which the American authorities are distinguishable from the English, which is, that the American courts look upon a mortgage, not as a conditional sale, but as a mere lien upon the lands which it covers, the legal fee in which lands never passes out of the mortgagor. An American mortgage is, therefore, not such a compliance with a power to sell that it could be maintained even at common law."

When our statute was enacted, the principles of construction announced by Barbour and Hoffman had ceased to be law. The theory of mortgages that prevailed had altogether overthrown the doctrine of their texts, admitting it to be a correct statement of the law when written, and conceding in its application to this case that the county court is to be viewed as a court of chancery. It becomes unnecessary to refer to other points learnedly discussed in the arguments of counsel. The settlement of accounts will be left to be settled in the court below, as also the question of reimbursement for improvements. The decree must be reversed and possession of the property awarded to the appellants.

Decree reversed.