IN THE MATTER OF THE ESTATE OF WILLIAM HARKER, Deceased; DORA B. SALLER, Appellant, v. ELIZABETH HARKER et al.

**Contract Between Widow and Residuary Beneficiary:** CONSIDERATION. Where the widow of a testator contracted with residuary beneficiaries to convey to such widow all the interest in the estate in consideration of a certain amount in cash, her relinquishment of allowance for support, and her agreeing to pay a certain bequest and the debts and expenses of administration, and to carry out the provisions of the will directing the erection of certain buildings, etc., the income from which was to be devoted to charity, the obligations assumed by the widow constituted a sufficient consideration for the agreement; the debts not being ascertained, and the value of the estate being undetermined though appraised and consisting principally of real estate and bank stock, which was to be converted into cash.

FAILURE OF CONSIDERATION: *Construction of Will.* Where residuary beneficiaries of a will conveyed their interest in the estate to the widow in consideration of a certain amount in cash, and of her carrying out the provisions of the will, by which a certain amount was authorized to b e expended in the erection of a monument, failure to expend the amount authorized did not constitute a failure of consideration for the agreement, entitling a beneficiary to rescind the contract and claim a share under the will; it not appearing that the monument erected was not such as the will contemplated, since the sum named therein was merely by way of limitation.

*Same.* Where residuary beneficiaries of a will conveyed their interest in the estate to the widow in consideration of a certain amount in cash and her agreement to erect a certain building directed by the will, the failure of the widow to erect such building was not a failure or partial failure of consideration for the contract, such as to entitle a beneficiary to avoid it and claim her share of the will; it not appearing that the widow would not erect it, no time being fixed therefor and no demand that she do so having been made.

FAILURE TO PERFORM. *When Not a Fraud* An allegation that a party to a contract did not intend to carry it out, without the statement of any facts whatever establishing such intent except the ultimate failure to perform the agreement, is not

a sufficient charge of fraud, since such failure is not evidence of fraud in the inception of the contract.

**Contracts by Minor:** UNDER DIRECTION OF PROBATE COURT. *Binding on Attaining Majority.* Where a contract was signed for a minor by her guardian under direction of the probate court, on attaining her majority, the minor cannot claim that the contract is not binding on her because she was a minor when it was executed.

*Appeal from O'Brien District Court.*—Hon. William Hutchinson, Judge.

SATURDAY, APRIL 13, 1901.

On an application of the executors of the will of William Harker, deceased, for approval of final report and for discharge, Dora B. Sayer, one of the beneficiaries under the will, filed objections, which on motion to strike were held insufficient, and the application for approval of report and final discharge was granted. Dora B. Sayer appeals.—*Affirmed.*

*J. S. Dewell* for appellant.

*Boies & Roth* for appellees.

McClain, J.—Appellant's objections to the application of the executors for approval of final report and for discharge took the form of a statement of grounds on which it was alleged the executors had misapplied the property of the estate and had not made proper distribution thereof, by reason of which appellant had failed to receive the share to which she was entitled under the will, and affirmative relief was asked. The motion to strike was treated as a demurrer, and we are therefore in a situation to assume the truth of all the material allegations made by her as fully as though the facts stated by her were otherwise shown.

It appears that William Harker died May 26, 1895, leaving a will, which was duly probated on July 5th, by which his widow,.

Elizabeth, and the other persons named as defendants in this action were named executors of his estate, and they were appointed accordingly. By the terms of the will, the widow was to have the homestead and all property of every kind used on or connected with it, and $40,000 in money; five thousand dollars was bequeathed to a nephew; the expenditure of $5,000 for a monument for testator, and for his widow, when she should die, was authorized; three persons were named as trustees, to whom the sum of $10,000 was to be paid, out of which to buy a suitable lot, and with which to erect thereon a building of two stories, to be occupied below for storerooms and above as an opera house, to remain under the charge and control of the three persons named and their successors; the proceeds of the rentals thereof to be used for expenses and repairs, and beyond that expended in charity, as the trustees should think best; further, the conversion of the entire estate into money was directed, and it was provided that, after carrying out the directions specified, the balance of the estate should be distributed to the brothers and sisters of testator, or, in the event of the death of any of them, then to their issue, in equal portions. An appraisement of the estate filed September 28, 1895, showed real estate of the value of $28,070, and personal property (principally bank stock) to the value of $77,967. The homestead included in the valuation of the real estate was appraised at $1,600. On October 9th, the widow entered into an agreement with those entitled to share as beneficiaries in the distribution of the estate by which, in consideration of the sum of $30,000, to be paid ratably to those beneficiaries who were entitled to share in the general distribution of the estate, and the agreement on her part to erect the monument and the opera house building, and pay the bequest to the nephew and the debts of the estate and costs of administration, and the relinquishment of any claim of allowance for support, the said beneficiaries sold, assigned, and transferred unto

the widow, each of them, all his right, title and interest in and to said estate. The object of the agreement was specified to be "to settle all disputes which may arise under said last will and testament of said William Harker, and to settle with his heirs, as provided for by him in said will, for their distributive shares in his estate under said will." This contract was signed by the widow and by all the adult beneficiaries. Some of the beneficiaries being minors, an application was made in vacation to the judge of the district court by the guardian of said minors for authority to sign this contract in their behalf, in which application the terms of the contract and of the will were set out; and the guardian was thereupon authorized and empowered to sign for and in behalf of said minors, and to accept from the widow the amount to which said minors would be entitled under the agreement in full of all right, title, and interest of the said minors, and each of them, in and to said estate under and by virtue of the will. Appellant was one of the minors referred to, and her share was receipted for by the guardian, who was also one of the executors, and has been duly paid to her on her attaining majority. Appellant became of age in October, 1898. The final report and application for discharge were made by the executors in April, 1899. The report showed the transfer to the widow, in alleged pursuance of the terms of the agreement, of all real estate, valued at $27,352, including the homestead, and all of the personality, valued at $52,898. In May following, appellant filed her objections and application for affirmative relief, as already indicated. She asked that the property be reappraised, alleging that it had increased considerably in value after the appraisement, and asked that sale thereof be made, and that her share under the terms of the will be set off to her, without regard to the agreement, contending that such agreement was invalid because without consideration in any benefit to the beneficiaries or detriment to the widow, and because procured by fraud, and, further, because

the appellant was a minor at the time the contract was approved. For the purpose of showing failure of consideration and fraud in connection with the agreement, appellant alleges that the widow has erected a monument at much less expense than was contemplated in the agreement, and has entirely failed and refused to carry out the provisions of the agreement with reference to the erection of the opera house. As bearing on the effect of this contract, it is proper to refer to the fact that in a contest arising since its execution the provision of the will for the erection of the opera house has been held invalid.

It appears from the foregoing statement of the contention of the appellant that the questions which we have to consider relate to the validity and effect of the agreement between the widow and the beneficiaries. As to the contention that appellant may have relief on the ground that she was a minor when the contract was made, it is sufficient to say that the signing of the contract for her by her guardian under the direction of the probate court made the contract as binding and conclusive with reference to her as if she had been and adult at the time of its execution, and signed it in person. As to the contention that it was without consideration, the conclusive answer is that the widow bound herself to discharge obligations which otherwise must have been satisfied out of the estate, to wit: the without consideration, the conclusive answer is that the widow bound herself to discharge obligations which otherwise must have been satisfied out of the estate, to wit, the obligation to pay the legacy to the nephew, to pay the debts of the estate, and to pay the costs of administration, as well as the obligations, whatever they may have been, with reference to the monument and the opera-house building. At the time the contract was executed the indebtedness of the estate was not ascertained, for the time for filing claims had not expired, and, of course, the costs of administration were still entirely contingent. The value of the estate was also unde-

termined; for, while there had been an appraisement, a large part of the estate still consisted of real property and bank stock, which the executors were to convert into money, and the amount of the proceeds could not be known. As a matter of fact, both these kinds of property seem to have appreciated in value, but it might as well have happened that they had depreciated, and depreciated greatly; and, as an offset to the possible benefit of appreciation, the widow assumed the risk of depreciation and loss. The appraisement cannot be regarded as fixing conclusively the real value, even at the time it was made; and the value of the property transferred to the widow, according to the report of the executors filed and approved in the lower court, would indicate a much smaller aggregate valuation than that shown by the appraisement. The real value is immaterial. The controlling consideration is that, instead of taking the homestead and $40,000 in cash, the widow took the property in kind, obligating herself personally to make immediate cash payments to the general beneficiaries, and to carry out the other provisions of the will. In view of the sufficiency of the consideration at the time the contract was made, it is wholly immaterial that its execution has resulted ultimately in a large advantage to the widow.

The complaint of appellant is based, largely, however, on the failure of the widow to carry out the provisions of the will relating to the monument and the opera-house building. As to the monument, it is sufficient to say that the sum named in the will for that purpose was only by way of limitation. It does not appear that the widow has not erected such a monument as was contemplated by the will, and the agreement required nothing more of her. The same may be said with reference to the agreement relating to the opera-house building. The widow was to erect "said building * * * provided for by the last will and testament," etc.; and our construction of the whole instrument is that she assumed personally to carry out whatever obligations the will imposed upon the executors with reference

to all specified legacies. It is argued for appellant that the object of this agreement was simply to secure the erection of this building, which it was thought could not be compelled under the terms of the will, it being supposed that the clause of the will with reference thereto was void. But no such purpose is evidenced by the language used, nor indicated by the circumstances under which the contract was made. It does not appear in any way that it was supposed that the amount of money which the widow would receive under the contract would exceed the amount which she otherwise would have received by just this $10,000, or that the general beneficiaries would receive in the aggregate just $10,000 less than they would have received under the will, treating the clause in question as invalid. We cannot, therefore, consider the failure of the widow to erect this building as a failure or even a partial failure of the consideration for the contract, such as to entitle appellant to avoid it. Moreover, it does not yet appear from any facts stated by appellant, or otherwise in the record, that the widow will not erect this building. No time for its erection is named, no demand has been made upon her to proceed with its erection, and she has not as yet done anything inconsistent with the purpose to proceed in the matter. And, further, if the failure to erect the building is to be looked upon as a breach of this personal contract on the part of the widow, then appellant has no such interest in its performance as entitles her to complain. With reference to the charge of fraud on the part of the widow in the execution of the contract, it is enough to say that it is based entirely on the assumption that the widow induced the beneficiaries to enter into the contract by the promise to carry out these provisions of the will, intending at the same time not to do. There is no other charge that constitutes the least semblance of an allegation of fraud, and this charge, plainly, is insufficient for the purpose. It certainly is not enough to charge fraud in a contract to say that a contracting party did not intend

to carry out such contract, without the statement of any facts whatever establishing such intent, except the ultimate failure to perform the agreement.    Such a failure is a breach of the contract, if anything, and not evidence of fraud in its inception.

We are therefore irresistibly impelled to the conclusion that appellant has no ground of objection to the final report of the executors showing the settlement of the estate in accordance with the terms of this agreement, and that the court properly approved such report and discharged the executors.—AFFIRMED.

LADD, J., took no part.