Argued March 15, reversed and decree entered April 19, rehearing
denied May 31, 1921.

# KIRK v. MULLEN.

(197 Pac. 300.)

**Guardian and Ward—Guardian not Authorized to Make Contract
Binding Ward's Estate in First Instance.**

1. A guardian is not authorized to enter into a contract which
will bind the ward's estate in the first instance, except to mort-
gage the ward's land for certain purposes, under Section 1328, Or. L.,
and where such a liability is incurred for the benefit, or on behalf
of the ward, it is primarily the guardian's contract, and the guardian,
and not the one with whom he contracts, must look, in the first
instance, to the ward's estate for compensation.

**Infants—Circuit Court Judgment Ordering Sale of Infant's Land
Void for Lack of Jurisdiction.**

2. Judgment, attachment, and sale of infant's land in an action in
the Circuit Court *held* absolutely void, such court having no juris-
diction, in view of Section 936, Or. L., giving the County Court exclu-
sive jurisdiction of the sale of an infant's property.

**Records—Registration Proceedings by Purchasers at Void Sale of
Infant's Land, Without Notice to Infant, Set Aside.**

3. Registration proceedings taken by purchasers of infant's land
at sale under judgment of Circuit Court, void for want of juris-
diction, without the infant having been made a party to such pro-
ceedings, should be set aside.

**Judicial Sales—Confirmation Does not Validate Sale on Judgment
Void for Want of Jurisdiction.**

4. A confirmation cures irregularities, but it cannot render valid
a sale upon a judgment void for want of jurisdiction in the court to
render it, or upon process which the court had no jurisdiction to
employ.

**Infants—Confirmation of Sheriff's Sale Under Void Judgment Did
not Validate Sale.**

5. Circuit Court's confirmation of sale of infant's land under a
judgment of such court void for want of jurisdiction, did not vali-
date the sale.

---

1. On liability of ward's estate for debts contracted and ex-
penses incurred by guardian in carrying on business, see note in
40 L. R. A. (N. S.) 224.

4. Confirmation of judicial sale as not validating void sale, see
note in 29 Am. St. Rep. 498.

Grounds of collateral attack on confirmed judicial sale, see note in
1 A. L. R. 1446.

Purchaser at judicial sale as purchaser *pendente lite*, see note in
Ann. Cas. 1918C, 66.

From Marion: GEORGE G. BINGHAM, Judge.

Department 1.

This is a suit to remove an alleged cloud on the title of plaintiff to certain real property claimed by plaintiff, and to have declared void a judgment and sale of the premises whereby the defendants claim title, also to have set aside and declared void a decree in a registration proceeding whereby defendants claim that their title has been confirmed. The facts as alleged in the complaint and disclosed in the pleadings are as follows: On January 26, 1903, the plaintiff, being then a minor, was the owner of about twenty acres of land in Marion County, his mother and guardian, Matilda Haas, being the owner of adjoining land. On December 19, 1905, the guardian, acting on her own behalf, and assuming to act as guardian for plaintiff, and in conjunction with M. J. Raymond, entered into a contract with Benjamin Schwarz & Sons for the cultivation and sale of 20,000 pounds of hops, said hops to be grown on the lands of Mrs. Haas and the plaintiff. On March 3, 1906, Mrs. Haas, as guardian, filed a petition in the County Court of Marion County, setting forth the fact that she had entered into said contract, and, through inadvertence, had failed to obtain an order of the County Court authorizing her to do so. She alleged that she had planted upon said minor's premises about twelve acres of hops, and had a like acreage upon her own land adjoining, and that a profit could be made for the minor, and it would be to the best interests of his estate to permit the guardian to proceed with said contract; and asked the court to ratify and confirm her action in executing the same, which was done. On March 14, 1906, and thereafter, the guardian at-

tempted to carry out the contract, which provided, among other things, that Schwarz & Sons should advance moneys for the cultivation and picking of said hops, which advances were to be taken out of the purchase price, and, further, that in case the sellers failed to carry out their contract to cultivate and deliver the hops, such advances were to be repaid with interest. Mrs. Haas failed, to some extent, at least, to carry out the contract, and a controversy arose between her and Schwarz & Sons, relating to repayment of the advances, which was settled by her giving a promissory note for $200, the amount agreed to be due Schwarz & Sons, payable thirteen months after date, with 8 per cent interest. This note was signed, "Matilda Haas; Joe W. Kirk, Matilda Haas, guardian; M. J. Raymond by Matilda Haas." The hop contract was signed, "Matilda Haas in individual capacity; Matilda Haas as guardian of said minor; M. J. Raymond." The note was not paid, and Schwarz & Sons on June 24, 1908, began an action to collect the same, and attached the tract belonging to plaintiff. Mrs. Haas appeared in her own capacity and as guardian for plaintiff. After demurrer she filed an answer, admitting the execution of the note but claiming certain offsets by way of damages, which latter defense was stricken out, and judgment was rendered against her and the plaintiff in this suit for $224, and $21 costs, together with execution and order of sale of the attached property.

Execution was issued on October 17, 1908, the attached property was duly advertised, and sold to defendant Mullen, and the sale was confirmed. On January 18, 1910, a sheriff's deed was duly issued to Mullen, who now claims title thereunder. It is averred that the description in the deed was slightly

erroneous, rendering a proceeding to register title advisable to correct it; but, on inspection it is apparent that the description is self-correcting, and amply sufficient in that respect to describe the tract claimed by plaintiff. The defendants entered into possession of the land in controversy immediately after the sheriff's sale, and have ever since been so in possession.

Later, on July 8, 1911, defendants filed their application in the Circuit Court to register title to said tract in pursuance of Chapter 3 of Title LII, Or. L. (Olson's Comp.), and in said application stated, among other matters, that "there are no other persons whosoever who have, or claim to have, any interest or estate in said real property, either in law or equity, in possession, remainder or expectancy." Thereafter the proceeding took its usual course, and a notice of said application, directed to "all whom it may concern," was published as required by law. In due time the final order was obtained, decreeing defendants to be the owners of the tract, and barring the claims of all persons whatsoever to the same. The alleged discrepancy in the sheriff's description was noted and corrected in said decree.

The plaintiff resided with his mother near the defendants, and the families were on friendly and visiting terms, and neither he nor his mother was informed of the proceedings, nor was any summons or notice served upon him, except the published notice above mentioned. Shortly after coming of age he brought this suit to annul the proceedings.

That part of the complaint directed against the validity of the registration proceedings alleges that defendants knew that plaintiff was the owner of the tract and that he resided in Marion County, and charges that defendants' allegation that "there are

no other persons whosoever who have, or claim to have, any right or estate in said real property, either in law or in equity, in possession, remainder, reversion or expectancy,'' was willfully false and was made for the purpose of defrauding plaintiff and avoiding personal service of summons upon him; and that by reason thereof plaintiff had no notice or knowledge of said proceedings, and was prevented from asserting his rights in the premises. The Circuit Court found that the judgment and sale under the execution, in the action brought by Schwarz & Sons, were regular and valid, and conferred title upon defendants, from which decree plaintiff appeals.

REVERSED. DECREE ENTERED.

For appellant there was a brief with oral argument by *Mr. Myron E. Pogue* and *Mr. E. P. Morcom.*

For respondents there was a brief over the names of *Messrs. Carson & Brown* and *Mr. Grant Corby,* with oral arguments by *Mr. Thomas Brown* and *Mr. Corby.*

McBRIDE, J.—1. The judgment, attachment, and sale of plaintiff's land upon the action brought by Schwarz & Sons were without jurisdiction, and were absolutely void. In the first place, there is not, in the common law or in the statutes, any provision that permits a guardian of a minor to contract a debt which will bind the ward personally or at law. Nor, with the exception of Section 1328, Or. L., which permits the guardian to mortgage the land of his ward for certain purposes, is there any provision whereby the guardian is authorized to enter into any contract which will bind the ward's estate in the first instance: 21 Cyc. 115, and cases there cited; 12 R. C. L., p. 1128,

§ 27, and cases there cited; Woerner on Guardianship, § 57. In all of the works here cited an apparent exception to the rule is noted, which exception is stated by Cyc. in this language:

"The guardian may, however, be authorized by a court of competent jurisdiction to bind his ward by a contract. In doing so, however, he is not exercising a power belonging to his office but an extraordinary power conferred for the special purpose."

We have examined the cases cited in support of this proposition, and find them all to be suits or proceedings of equitable cognizance, attempting to fasten upon the estate of the ward, and not upon him personally, a liability for debts contracted for his benefit by his guardian. Among these cases are *Reading* v. *Wilson,* 38 N. J. Eq. 446; *In re Harker's Estate,* 113 Iowa, 584 (85 N. W. 786); *Owens* v. *Mitchell,* 38 Tex. 588; *United States Mortgage Co.* v. *Sperry,* 138 U. S. 313 (34 L. Ed. 969, 11 Sup. Ct. Rep. 321, see, also, Rose's U. S. Notes).

It could not be reasonably contended that a guardian cannot make any contract or incur any liability for the benefit of his ward. On the contrary, his duty often requires him so to do; but what we do mean to say is that, when a guardian incurs a pecuniary liability for the benefit, or on behalf of his ward, it is primarily the guardian's contract and his liability, for which, if the expenditure is proper, he, and not the one with whom he contracts, must look in the first instance to the ward's estate for compensation. As said by Mr. Justice SOULE in *Rollins* v. *Marsh,* 128 Mass. 116, 118:

"The guardian cannot bind the person or estate of his ward by contract made by himself. Such contract binds him personally, and recovery for breach of it must be had in an action against him: *Hicks* v. *Chap-*

*man,* 10 Allen, 463; *Bicknell* v. *Bicknell,* 111 Mass. 265; *Wallis* v. *Bardwell,* 126 Mass. 366. He cannot escape liability on such contracts by reciting that he makes them in his official capacity; and it is immaterial, in a suit brought against him thereon, whether he is described by his official title or not. The judgment in either case must be against him personally, and the description has no legal effect."

In *Trutch* v. *Bunnell,* 11 Or. 58 (4 Pac. 588, 50 Am. Rep. 456), this court had before it a case involving the legality of a mortgage given by the guardian, with the approbation of the County Court, to secure money borrowed and invested for the benefit of the ward; and it was there held in the absence of a statute authorizing such obligation the mortgage was void and did not bind the ward's estate. Mr. Justice WALDO in his opinion in that case remarked:

"The power to mortgage, as a mortgage is construed in this state, is incidental to another power— the power to borrow money. Before there can be a power to mortgage there must be a power back of the mortgage to contract the debt which the mortgage is given to secure. A power to give a mortgage to secure the payment of money without a power to borrow the money is a contradiction. Now, a promissory note simply given by a guardian, with or without the authority of the County Court, for money borrowed and invested for the benefit of the ward, is certainly void."

2. We conclude, therefore, that the guardian here had no authority to borrow money or to give a note which would render her ward personally liable in an action at law. But, conceding for the purposes of this discussion what the writer is far from conceding in reality, that somewhere, and in some tribunal, Schwarz & Sons could exact from the estate of the minor payment of the note upon which their action was brought, it seems clear to us that the Circuit

Court had no jurisdiction to entertain such a proceeding. In *Monastes* v. *Catlin*, 6 Or. 119, it was held that the appointment of guardians by the County Court was part of the probate jurisdiction conferred upon that tribunal by Section 12 of Article VII of the Constitution. Section 936, Or. L., provides that:

"The County Court has exclusive jurisdiction, in the first instance, pertaining to a court of probate; that is * * to direct and control the conduct and settle the accounts of executors, administrators and guardians; * * to order the renting, sale, or other disposal of the real and personal property of minors."

Elaborate procedure is provided for the sale of real property by guardians, when deemed necessary by the County Court. There must be a petition under oath showing the necessity for the sale, and an order to show cause why the sale should not be made, or, in case formal service cannot be made, the notice must be published in a newspaper for three weeks prior to the hearing. The guardian is required to give a special bond, take and subscribe to an additional oath, and to publish a notice of the sale in the manner provided for in sales by executors and administrators. Every precaution is taken to see that the sale is necessary, fair, and for the purpose of paying legitimate charges against the estate. Accordingly it has been commonly held that the property of a minor under guardianship is *in custodia legis* and is not subject to seizure and sale upon execution: *Sturgis* v. *Sturgis*, 51 Or. 10 (93 Pac. 696, 131 Am. St. Rep. 724, 15 L. R. A. (N. S.) 1034), and cases there cited; 6 C. J. 391, note 21e; *Coffin* v. *Eisiminger*, 75 Iowa, 30 (39 N. W. 124); *Grant* v. *Humbert*, 114 App. Div. 462 (100 N. Y. Supp. 44).

The cases cited by counsel for defendants all arise out of transactions where the debt sued upon was primarily the debt of the minor, and where no constitutional or other legislative provision gave to the County Court exclusive jurisdiction over the estate of the minor. In *Thacher* v. *Dinsmore*, 5 Mass. 299 (4 Am. Dec. 61), Dinsmore, the defendant, was appointed guardian of A. L., an insane person who was at the time indebted to the plaintiffs. Dinsmore gave to plaintiffs his promissory notes as guardian of A. L. for the sums due them; and when A. L. subsequently recovered his reason, Dinsmore was discharged from his guardianship. The plaintiffs sued Dinsmore upon the notes. Among other matters the court held:

"The question to be decided, on the facts agreed in this case, is whether the defendant is liable in this action. If an action is maintainable against any person, it must be the defendant; for the guardian of an insane person cannot make his ward liable to an action as on his own contract, by any promise which the guardian can make. Neither can the defendant be sued in his capacity of guardian, so as to make the estate of his ward liable to be taken in execution; for the judgment is not against the goods and estate of the ward in his hands, but against himself. A creditor may sue the insane person, but shall be defended by his guardian, and in that case, judgment being against the insane person, it may be satisfied by his property."

The case seems to the writer to be authority for the proposition that a guardian cannot bind his ward in an action at law for a contract executed by himself as guardian, which is the situation here. Whatever the authority of the probate court over the estate of persons under guardianship may have been at that time, in the State of Massachusetts, here it is exclusive, not only by the terms of the constitution, but

by the terms of the statute as well.    *Ex parte Leighton,* 14 Mass. 206, is not fully reported, but appears to hold that an insane person under guardianship is liable to be imprisoned on execution for a debt contracted by him prior to his insanity.    It is not in point here.    In the *Harker Case,* 113 Iowa, 584 (85 N. W. 786), the court held that a minor ward was bound by a compromise agreement signed by her guardian, such settlement having been authorized by the probate court.    This decision seems to have been placed upon the ground that the statute of that state was sufficiently comprehensive to authorize the guardian, under the direction of the court, so to bind the ward.    We have examined that statute and it is much broader and more comprehensive than ours.    It is as follows:

"Guardians of minors must prosecute and defend for their wards, may employ counsel therefor, lease lands, loan money, and in all other respects manage their affairs under proper orders of the court or judge thereof": Comp. Code Iowa, 1912, § 647.

It should be remembered, however, that this case was begun in the probate court, and not in proceedings instituted in another jurisdiction.    The case of *Shaffner* v. *Briggs,* 36 Ind. 55 (10 Am. Rep. 1), apparently supports defendants' contention, but the statement of facts is so indefinite that it is impossible to say upon what ground the court based its opinion. It appears that a judgment had been obtained against the minor, and an execution and sale of his property had.    Concerning the validity of such sale, the court announced only this not very convincing conclusion:

"Again, it is urged that the land of an infant cannot be sold on an execution against him but that his guardian must proceed to convert it into money and pay the judgment.    We are of a different opinion."

The Constitution of Indiana contains no provision vesting jurisdiction over the estates of minors under guardianship in a particular court, and this may be the reason for the holding. The doctrine of *Sturgis* v. *Sturgis,* 51 Or. 10 (93 Pac. 696, 131 Am. St. Rep. 724, 15 L. R. A. (N. S.) 1034), while it may partake of the nature of *dictum* is nevertheless persuasive and sound.

There is not a single valid reason for holding that the Circuit Court cannot invade the probate jurisdiction of the County Court, in relation to the sale of realty by executors and administrators, which does not apply with equal force to sales and contracts by guardians. The law preserves with jealous care the property rights of those who, by reason of their infancy or defect of mentality, are unable to manage their own affairs. It has selected the local court of the county as the tribunal which shall pass upon the necessity of a sale of the minor's realty. It has given to that court the authority to say whether or not it shall be mortgaged; and the power to raise money for the minor's benefit by mortgages does not imply a power in the guardian to bind the minor by borrowing money without a mortgage. As said in *Trutch* v. *Bunnell,* 11 Or. 58 (4 Pac. 588, 50 Am. Rep. 456), a note given for money so borrowed is void as against the minor. The case at bar disclosed the necessity for the rule. Here, the guardian, who owns adjoining land, borrows money to carry out a joint contract between a firm of hop buyers on one side, and herself, another party, and this thirteen year old minor on the other. She fails to pay the money. Neither her property nor that of her adult associate is seized, but the minor child is "left with the sack to hold," and his property sacrificed to pay the debt;

and this without any direction of the County Court, which is the special and jurisdictional curator of the property of children under guardianship. We are of the opinion that the attachment and sale under it were without jurisdiction, and absolutely void.

3. The registration proceedings taken by defendants should be set aside. Whatever may have been the construction placed by defendants or their counsel upon the effect of the attachment proceedings, they were void as a matter of law. Upon the record, therefore, as a matter of law, defendants had notice that plaintiff had a valid and existing claim upon the premises. Indeed, the reason for bringing the registration proceeding advanced in defendants' brief is that there seemed to be a mistaken description in the sheriff's deed that required correction. If this had been true, such correction would only have been required to bar a supposed claim of plaintiff, arising out of the mistake; so, in any event defendants knew, as a matter of law, that there was a defect in their title, and that such defect could be remedied only by a decree barring plaintiff's rights or claims in the premises. Plaintiff was obviously the person whose claims the defendants were seeking to bar. Knowing this, they should have seen that plaintiff, who resided in their neighborhood, was served with summons; and the conclusion is irresistible that the statement in the application that, "there are no other persons whosoever who have or claim to have any interest or estate in said real property, either in law or equity, in possession, remainder, reversion, or expectancy," was made with the intent to avoid personal service of summons upon defendant. A decree so surreptitiously obtained is void: 2 Freeman on Judgments, § 489; *Johnson* v. *Coleman,* 23 Wis. 452 (99 Am. Dec.

193); *Froebrich* v. *Lane,* 45 Or. 13 (76 Pac. 351, 106 Am. St. Rep. 634).

4, 5. Much is said in defendants' brief in regard to the effect of the confirmation validating the sheriff's sale. A confirmation cures irregularities, but it cannot render valid a sale upon a judgment void for want of jurisdiction in the court to render it, or upon process which the court had no jurisdiction to employ: 16 R. C. L., p. 84. This suit is not a collateral, but a direct attack upon both the judgment against plaintiff in the action upon the promissory note and upon the decree in the registration proceedings. Authorities cited by defendants on the subject of immunity from collateral attack have no application.

There is no allegation in regard to the value of the rents and profits of the land while in defendants' possession, and no claim for improvements made by defendants, so it is probable that they about offset each other. At all events, if we are to judge by the result of his guardian's efforts in attempting to cultivate hops on the land, the plaintiff is quite as well off now as he would have been, had the land remained in the guardian's possession.

The decree of the Circuit Court will be reversed and a decree entered here, setting aside and declaring void the judgment and sale in the action against plaintiff upon the promissory note, and also setting aside and declaring void the decree in the registration proceedings; and the plaintiff will be decreed to be the owner in fee, and entitled to the unclouded possession of the land in dispute and will recover his costs and disbursements.

REVERSED. DECREE ENTERED. REHEARING DENIED.

BURNETT, C. J., and BROWN and HARRIS, JJ., concur.