Argued June 24; affirmed July 13; rehearing denied
September 21, 1937

## GODFREY *v.* GEMPLER ET AL.

(70 P. (2d) 551)

*Howard P. Arnest*, of Portland, for appellant.

*Alfred P. Kelley*, of Portland (Albert Kemmer, of Portland, on the brief), for respondent.

BEAN, C. J. This is a suit by plaintiff, Emma Godfrey, as assignee of a note and mortgage executed by Josephine Gempler, guardian of the person and estate of Isaac P. Wyant, incompetent, to foreclose the mortgage. The note and mortgage were executed on April 25, 1924, pursuant to and based upon a petition and order of the circuit court of Multnomah county, Oregon, sitting in probate. Josephine Gempler was appointed guardian of the person and estate of Isaac P. Wyant on February 14, 1924, and duly qualified. Appraisers were appointed February 25, 1924, and an inventory filed under date of March 17, 1924, which shows cash, $52.81, and real property. On April 4, 1924, said guardian petitioned the court for an order fixing compensation for the care, support and maintenance of the ward and authority to borrow $2,500 upon the real property belonging to said guardianship estate, for the care, support and maintenance of the ward, to pay taxes, etc., and an order was entered thereon. On April 25, 1924, the guardian filed a supplemental petition for an order to borrow $3,000 instead of $2,500. Upon said date an order was made and entered authorizing Josephine Gempler, as such guardian, to borrow from Mary Farrell the sum of

$3,000 and to execute as security therefor a promissory note and mortgage upon the real estate belonging to the estate of Isaac P. Wyant, incompetent.

The petition and supplemental petition recite in detail, among others, the following jurisdictional facts: The appointment and qualification of Josephine Gempler, as guardian of the person and estate of Isaac P. Wyant, incompetent; that the income from said real property is insufficient to support the ward, and describes the real estate; that the ward is 86 years of age and is in need of constant care day and night and has been for the past year incapable of caring for himself; that the petitioner is the oldest daughter of the incompetent, Isaac P. Wyant, and that he has been for several months past under her care and living in her home, and that all the other children of said incompetent, with the exception of Lester G. Wyant whose address is unknown, on October 4, 1923, consulted with each other and agreed that the support and maintenance of their father were worth the sum of $200 per month, so long as extra help did not cost over $75 per month; that said Wyant's condition is such that it required the services of petitioner and her husband to control him and care for his needs. The petition further recites: "And this petitioner feels and therefore alleges that it is worth Two Hundred Dollars ($200.00) per month to care for him as is necessary and as she is and has been doing for the last several months," and that the ward is in need of clothing, and the taxes were delinquent. The petition then recites: "This petitioner further says that if it meets the approval of the court, the amount of monthly compensation, as agreed among the children of the said Isaac P. Wyant, there is now due this petitioner for board, care, etc., for a period of four (4) months to March 21, 1924, at

the rate of Two Hundred Dollars ($200.00) per month, or Eight Hundred Dollars ($800.00) prior to March 21, 1924, which money petitioner should have, and she should be paid from month to month hereafter. Petitioner further says that in order to pay for said board and care and said taxes, and furnish clothing for the said Isaac P. Wyant and such other necessaries as will come from time to time, it is absolutely necessary that this guardian should either borrow money upon the land of said estate or sell the same for such purpose, and this petitioner believes that it would be to the best interest of said estate and to all persons interested therein that a loan should be obtained by this guardian sufficiently large to care for him for several months to come and to pay for services already performed by this petitioner, as hereinabove set out;'' and, further, that there is not sufficient money on hand nor income from the property to give the ward adequate care, comfort and support; that there is no ready sale for this class of real property.

The petitioner prayed for an order of the court fixing her monthly compensation and authorizing the borrowing of $2,500 and to secure the same by a mortgage on 32 acres of land.

The order of April 4, 1925, based upon said petition, recites the jurisdictional facts set forth in the petition, and that the monthly compensation of Josephine Gempler, so long as she personally cares for the said Isaac P. Wyant, shall be and is fixed in the sum of $200; that she is authorized and directed to borrow $2,500, paying therefor a rate of interest not to exceed seven per cent per annum, and to execute the mortgage, and that out of said moneys so borrowed she pay unto herself the sum of $800 for care and support of said Isaac P. Wyant prior to the 21st day of March, 1924. The order

of April 25, 1924, supplementing the order of April 4, 1924, authorized an increase. of the sum of $2,500 to $3,000, at the same rate of interest, to be secured by the mortgage in the same manner.

The guardian filed a final report showing receipt of the $3,000 borrowed and its disbursement, showing $1,347.32 of said $3,000 was disbursed and used for the purchase of medicine, care, support and maintenance of the ward, leaving a balance, together with the cash on hand, of $1,705.28. After the allowance of $275 as attorney's fees, $1,630.28 was turned over by said guardian to the executor of the estate of Isaac P. Wyant, deceased, which transaction is shown in the first report of said executor filed November 10, 1925. No objection was filed to the final account. The executor of the estate of Isaac P. Wyant, deceased, reported to the court that the claim of Mary Farrell, based upon said promissory note, had been presented to him and had been allowed. Thereafter reports were filed by said executor showing the transfer of the claim of Mary Farrell to this plaintiff, and the payment of interest on said note and mortgage due this plaintiff. These reports were made throughout a period of more than ten years.

The circuit court of Multnomah county decided in favor of plaintiff. Under date of October 16, 1936, said court signed findings of fact and conclusions of law and entered a decree. Defendant Ralph W. Wyant, as administrator de bonis non, with the will annexed of the estate of Isaac P. Wyant, deceased, appeals.

The appellant was appointed personal representative of the estate on July 29, 1935, and has defended the suit on behalf of the estate and by cross-complaint asserts that the note and mortgage are the personal

obligations of Josephine Gempler, who executed the same, and that they are not valid obligations of the estate of Isaac P. Wyant, and seeks to have the purported lien of the mortgage removed as a cloud upon the real property which, during his administration, has constituted practically the sole asset of the estate.

The appellant, whom we will hereafter term "defendant" assigns error of the court in permitting evidence to be introduced under the allegations to which the defendant demurred, and moved to strike a large portion thereof.

Defendant contends that the signature "Josephine Gempler, Guardian of the Person and Estate of Isaac P. Wyant, Incompetent," is simply the signature of Josephine Gempler, and that the words "Guardian of the Person and Estate of Isaac P. Wyant, Incompetent" are merely descriptive and do not alter the liability.

Section 1328 (Or. L. 1920), which was in force at the time of the execution of the mortgage in question, authorizes the guardian to manage the estate of his ward frugally and apply the income and profits thereof so far as may be necessary for the comfortable and suitable maintenance and support of the ward and his family, if there be any, and if the income and profits be insufficient for that purpose the guardian may "upon authority granted therefor by the proper county court, mortgage said real estate for such amount as may be necessary for the maintenance and support of the ward and his family, or the care of said property, and shall apply the proceeds from the same to those purposes." This section was amended in 1927 by chapter 358, which amendment does not apply to the transaction in question.

The petition of the guardian shows the required jurisdictional facts to authorize the county court to make the order for the execution of the mortgage in question, in compliance with the statute to which we have just referred.

■ The main contention of defendant is that a portion of this money was borrowed to pay a debt, namely, for four months expenses of the ward at $200 per month, or $800. As we view the matter, and as we understand the learned trial judge conceived it to be, the $200 per month was in the nature of current expenses of the ward and not such a debt as contended for by the defendant.

■ The petition may not be a model, but it sets forth to the court all the necessary facts to authorize the execution of the mortgage in question. The proceedings taken for the care of the ward were but the carrying out of the agreement and request of all of the members of the family, whose whereabouts were known.

In *Smith v. Williams*, 141 S. C. 265 (139 S. E. 625, 54 A. L. R. 964), at page 967, the court said:

"Family agreements are favored in equity. In Smith v. Tanner, 32 S. C. 259, 10 S. E. 1008, Chief Justice Simpson said: 'Courts of equity have uniformly upheld and sustained family arrangements in reference to property, where no fraud, imposition, or overreaching appears, with a 'strong hand.' As is said in the text-writers: 'In family arrangements, an equity is administered in equity which is not applied to agreements generally' (citing authorities). And such arrangements will be held binding when, in cases between strangers, the like agreements would not be enforced. It is needless to go into the reason of this doctrine. It is sufficient to say that it is well established, and has often been applied, both in England and America.' "

■ As to the contention that Lester G. Wyant was not present, the record shows he could not be found at the time his father was in dire need and required immediate attention, and he is not complaining, although he was made a party to this suit. The pleading of these portions of the probate and guardianship records were proper in respondent's reply.

■ With reference to the signature of the guardian and the form of the note and mortgage, while the note reads "I promise to pay", the signature shows that it is the obligation of the guardian of the person and estate of Isaac P. Wyant, incompetent. The mortgage, which includes a copy of the note, is "between Josephine Gempler, Guardian of the Person and Estate of Isaac P. Wyant, Incompetent, of the County of Multnomah, State of Oregon, party of the first part, and Mary Farrell of the County of Multnomah, State of Oregon, party of the second part," and contains the following covenant:

"And the said party of the first part and her successors does covenant and agree to pay unto the said party of the second part, her executors, administrators or assigns, the said sum of money above mentioned."

The mortgage is signed and sealed by "Josephine Gempler, Guardian of the Person and Estate of Isaac P. Wyant, Incompetent."

■ As to the strictness of the signature and proceedings by a guardian, to show the trend of the law, we refer to the following authorities: The county court is a court of superior jurisdiction in probate matters: *Russell v. Lewis,* 3 Or. 380; *Tustin v. Gaunt,* 4 Or. 305; *Monastes v. Catlin,* 6 Or. 119. In *Monastes v. Catlin,* supra, it was held that the appointment of guardians by the county court was part of the probate jurisdiction conferred upon that tribunal by section 12 of Art.

VII of the constitution. Section 28-1003, Oregon Code 1930, provides that:

"The county court has the exclusive jurisdiction, in the first instance, pertaining to a court of probate; that is,—

\* \* \*

"3. To direct and control the conduct and settle the accounts of executors, administrators, and guardians;

\* \* \*

"6. To order the renting, sale, or other disposal of the real and personal property of minors;

\* \* \*"

The general rule is stated in 28 C. J. 1177, § 304, in regard to an application for the sale of a ward's real estate, that the application must be in writing, and may be filed either in the name of the guardian for the infants, naming them, or in the name of the infants by their guardian,

"And the omission of a formal averment that the proceeding is brought by plaintiff as guardian is not material where the bill or petition states that plaintiff is guardian, and is good in every other respect as a guardian's bill or petition; nor is it material that plaintiff, who was duly appointed curator, describes himself in the petition as guardian. The petition should state, not the mere conclusions of the pleader, but all the facts which, under the statute, are necessary to give the court jurisdiction, and if sufficient jurisdictional facts are stated the jurisdiction of the court is not affected by the fact that some of the statements are untrue, or, on a collateral attack, by the fact the allegations are informal and defective."

In section 307 of the same volume, in regard to the signature and verification, it is said:

"Unless required by statute the petition need not be signed by the guardian, it being sufficient if it de-

scribes the guardian and he presents it in person. Where the petition is signed, it may be signed in the name of the guardian as such or in the name of the ward by his guardian, or it may be signed in the name of the guardian by his attorney; and, where the petition is expressly made on the behalf of an infant by his father and natural guardian and is signed by the infant and by the father in his own name, it is sufficient, although it is not again signed by the father as guardian.''

In *Andrus v. Blazzard,* 23 Utah 233 (63 P. 888), cited by defendant, as shown at page 890, it was simply held:

''Neither guardians nor the courts having jurisdiction over the estates of incompetent persons have power to bind the persons or estates of such persons unless expressly authorized to do so by law. In this state the duties and powers of guardians of incompetent persons are fixed and limited by statutory provisions, as also the duties and powers of the courts. Section 4007, Rev. St., provides that, in case the income of the ward's estate is insufficient for the comfortable and suitable maintenance and support of the ward and his family, the guardian may sell, mortgage, or lease the real estate, upon obtaining an order of court therefor.''

After referring to several sections of the statutes of that state, it is stated:

''There is no provision in the statute authorizing the court to order the guardian to bind either the said John Blazzard personally or his estate by the note or mortgage in question. It was the duty of the defendant Hurd, as guardian, to pay the just debts of his ward out of the latter's estate, in the manner prescribed by the statute; and when he chose to do so in a different way than that prescribed by statute, and liquidated his ward's debt by the execution, as guardian, of a note and mortgage under an unauthorized and void order of the court procured at his instance, he, in the absence of any other controlling circumstances, bound himself

as principal, and must look for reimbursement in the settlement of his accounts as guardian in the court which appointed him as such.''

. It will be noticed, in that case, that the mortgage was not given for the maintenance and support of the ward or his family, but to secure a debt. That case is not like the one at bar.

■ The procedural requisites in probate matters, such as the administration of a ward's estate, are not governed by strict technical rules as required in some pleadings.

In the annotations found in 95 A. L. R. 848 and 849, we read the following:

''Under a statute authorizing a guardian to mortgage his ward's property when it should appear to the satisfaction of the court that it was for the best interest of the estate, it was held that properly to vest the court with jurisdiction of the subject-matter, the requisite jurisdictional facts must somewhere be made to appear in the mandatory record of the court, although such facts need not be recited in the order or judgment. Stockyards Nat. Bank v. Bragg, 67 Utah 60, 245 P. 966. * * *

''In Gibbs v. Handy, 82 Colo. 297, 259 P. 517, an order of the court authorizing a guardian to execute a mortgage on the ward's land was held not invalid on the ground that it attempted to permit the mortgaging of the land for a term extending two years beyond the minority of the ward.

''And the order of the court was held not invalid because it did not fix the amount of the loan to secure which the mortgage was to be given, the court stating that this was at most a mere irregularity.

* * * * *

''In Powell v. Armour Fertilizer Works (1933) 205 N. C. 311, 170 S. E. 916, where a note and deed of trust were executed by a guardian pursuant to an order of the clerk of the superior court, and before it was ap-

proved by the judge as required by the statute, it was held that the judge's approval, which was later entered nunc pro tunc, cured the defect.''

■ ■ Defendant contends that the guardian should have looked to the estate for payment for care and maintenance of the ward for the four months prior to March 21, 1924, amounting to $800. At the time of the proceedings as to the execution of the mortgage the amount had not been fixed by the court but there was the agreement of the relatives. In *Kirk v. Mullen,* 100 Or. 563 (197 P. 300), the defendant refers to the following language:

''but what we do mean to say is that, when a guardian incurs a pecuniary liability for the benefit, or on behalf of his ward, it is primarily the guardian's contract and his liability, for which, if the expenditure is proper, he, and not the one with whom he contracts, must look in the first instance to the ward's estate for compensation.''

The amount expended for the care of the ward was approved by the court. That case is predicated upon a contract entered into by the guardian in a joint adventure on a hop deal. The court held there was no authority given by the statute to enter into a contract involving the ward's property, and further states, on page 573, that the power to raise money for a minor's benefit by mortgage would not imply a power in a guardian to bind the minor by borrowing money without a mortgage.

We are referred to a wealth of opinions from other states. We are not familiar with the statutes of those states, but we believe the old rule, in regard to such signatures being termed merely descriptive of the person, of late years has been somewhat modified. We are referred to *Prince's Guardianship,* 104 Or. 670 (209 P.

90), which was a case involving the fixing of compensation of a guardian. The case of *Sturgis v. Sturgis,* 51 Or. 10 (93 P. 696, 15 L. R. A. (N. S.) 1034, 131 Am. St. Rep. 724), cited by defendant, holds that the liability of the estate is one to be settled by the county court.

The arrangement as to compensation to a guardian is one to be settled by the probate court, which has authority to fix compensation. It was done in the guardianship matter of Isaac P. Wyant, incompetent. There is no evidence or indication that the services of Josephine Gempler were gratuitous, nor were so considered by any of the parties, nor by the county court. The order of the court and the agreement of the children conclusively shows that there is no basis to defendant's contention: 71 C. J. 66; § 11-1331, Oregon Code 1930. See *In re Beisel,* 110 Cal. 267 (42 P. 819).

■ The court had power to authorize the execution of the promissory note and mortgage: Woerner, American Law of Guardianship, § 74. See *Walker v. Goldsmith,* 14 Or. 125, 143 (12 P. 537). And it was proper for the circuit court to enter a decree foreclosing the mortgage.

■ Defendant assigns that the court erred in allowing respondent to recover the sum of $16.25 for continuation of the abstract of the property mortgaged. The mortgage document carries no provision for such an expenditure, and the law does not justify the same. The general rule is that no allowance can be made to any party to a foreclosure suit for an abstract of title of the property where the allowance is not authorized by the trust deed or mortgage, or by some statutory provision: 2 Wiltsie on Mortgage Foreclosure, 1181, § 930; §§ 7-606, 7-607, Oregon Code 1930. In 41 C. J. 145, § 1742, we read:

"Disbursements or charges properly incurred by the mortgagee may be added to the amount of the debt

decreed, such as the sum paid to redeem from a prior mortgage, but not any additional debt or obligation between the parties not specifically covered by the mortgage.''

 A provision in a mortgage for the payment of all expenses which the mortgagee might incur or pay because of the mortgagor's default includes the expense of obtaining an abstract of the mortgaged property: 41 C. J. 469, § 374, citing *American Sec. Co. v. Goldsberry*, 69 Fla. 104 (67 So. 862, 1 A. L. R. 15). The mortgagee is ordinarily not entitled to be compensated for the cost of a search of title or an abstract of title, unless allowed by a stipulation in the mortgage, but in some jurisdictions an allowance for a search is taxable: 42 C. J. 331, § 2051. This amount of $16.25, included in the decree as disbursements, should be eliminated and the decree will be so modified. This amount is so small that it ought not to change the decree as to costs.

Section 11-505, Oregon Code 1930, provides that the effect of a judgment or decree against an executor or administrator, on account of a claim against the estate of the testator or intestate, is only to establish the claim, as if it had been allowed by him, so as to require it to be satisfied in due course of administration. Applying this principle to the case in hand, the decree against the estate of Isaac P. Wyant and Ralph W. Wyant, as administrator de bonis non with the will annexed of the estate of Isaac P. Wyant, deceased, will simply fix the amount due the plaintiff as $3,000, with interest thereon at the rate of 7 per cent per annum from and after July 10, 1933, and attorney's fees, $75, and costs and disbursements.

Plaintiff's mortgage, described in the complaint, will be and the same is hereby adjudged to be a valid and subsisting first lien on the real property described

therein, prior in time and superior in right to the title, interest, lien or claim of defendants, or any of them, in or to the same; said mortgage will be foreclosed and the said real estate sold to satisfy the mortgage, and attorney's fees, costs and disbursements. No deficiency judgment against the administrator will be awarded. Said defendants and each and all of them are hereby foreclosed of any and all interest in and to the property described in said mortgage and heretofore referred to, except the superior right of redemption.

We think that the force of that part of the decree entered is as suggested above herein, notwithstanding the form.

With the correction of $16.25, and the suggestion as to the form of a portion of the decree, the decree of the circuit court is affirmed.

Plaintiff will recover her costs and disbursements.

ROSSMAN, KELLY and BELT, JJ., concur.